**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**INDEPENDENT WORKERS UNION OF FLORIDA, Defendant.**

Civ. No. 65–392–J.

United States District Court
M. D. Florida,
Jacksonville Division.
June 28, 1967.

Edward F. Boardman, U. S. Atty. for Middle Dist. of Florida, by William J. Hamilton, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff.

Thomas A. Larkin, Jacksonville, Fla., for defendant.

## MEMORANDUM OPINION

SCOTT, District Judge.

This cause arises out of a suit brought by the Secretary of Labor under the provisions of Title IV of the Labor-Management Reporting and Disclosure Act (hereinafter "Act") for a declaration that the defendant union's 1965 election of officers was void and for the direction of a new election under the supervision of the plaintiff. The main cause was tried before the Court on February 7–9, 1967, at the conclusion of which the Court orally announced that the election under attack was invalid and that a new election would be ordered. On April 4, 1967, Findings of Fact and Conclusions of Law and an Order directing the conduct of a new election were entered, in accordance with the Court's earlier oral ruling.

In the interim, on March 13, 1967, plaintiff filed a Motion for injunctive relief alleging violations of Section 401 (g) of the Act (29 U.S.C. Section 481 (g)) which purportedly threatened to invalidate the forthcoming court-ordered election. A temporary restraining order having been entered on March 13, 1967, and thereafter extended, the Motion for injunctive relief came on for final hearing on March 30, 1967.

At that hearing, plaintiff established by a preponderance of the evidence that subsequent to the trial in February, the defendant's incumbent president, John I. Kennedy, had expended moneys which had been received by the defendant by

way of dues in connection with mimeographed statements dated February 21, 1967, and February 27, 1967. Additional funds from the same source were used to prepare and mail a mimeographed announcement (dated March 6, 1967) of a meeting for members of the Labor Department of Jacksonville Shipyards on March 11, 1967. The expenditures in question totalled several hundred dollars.

The meeting of the Labor Department, the first meeting of its kind, ostensibly held to discuss wages and upgrading of the Labor Department, a predominately Negro group within the company organization, was held at union expense in an American Legion Hall several blocks from the defendant's Union Hall at 1455 Miami Road, Jacksonville, Florida. President Kennedy attributed the rental of the special meeting place for this meeting on an expected turnout in excess of the capacity of the Union Hall. Although the circumstances suggest that this meeting was held for political purposes, on the state of the entire record this Court cannot so hold.

A reading of the announcements of February 21 and February 27, however, reflects that the tone and content thereof were to endorse and encourage, by design or otherwise, the reelection of the president, John I. Kennedy. The following excerpts, while not typical of the total content of the announcements, are illustrative:

" * * * could a new officer, unfamiliar with these duties really do a good job for you? Of course not, the whole object of try to pull a quickie election is to eliminate your present officers and take over your Union.

"THINK of your last four years of continuance work with good pay checks. Don't be misled by stories of what everyone else can do for you.

"YOU KNOW WHAT YOU HAVE IN YOUR POCKET NOW, STICK WITH IT."

(Exhibit A)

"These services the Union provides are far more extensive, sound and effective direction of the Union day by day in all these areas are the responsibilities of your Union officers. No organization can risk getting somebody with no experience in such a post. " * * * keep your Union just as it is."

(Exhibit B)

As to these announcements of February 21 and February 27, President Kennedy testified that they were mailed in the ordinary course of union affairs and because of a pending battle with rival unions. It does appear that during the same time that the incumbent President Kennedy had been waging his campaign for reelection in the court-ordered election the defendant union simultaneously was involved in an election fight of its own—this one a representation campaign wherein the defendant was pitted against two international unions seeking a National Labor Relations Board election to determine the bargaining agent for employees of the Jacksonville Shipyards, Inc.

The Court is satisfied from the testimony and the totality of the circumstances surrounding the expenditures in question that some, if not all, were motivated, at least in part, to persuade Jacksonville Shipyard employees not to sign authorization cards for the two competing internationals and thus to retain the defendant as their bargaining agent. Expenditure of union funds for this purpose is not a violation of any of the provisions of the Act. The Court is also satisfied, however, that a prime purpose of the expenditures for Exhibits A and B was to promote the candidacy of the incumbent officers, principally President John I. Kennedy, in the court-ordered election. The use of moneys received by way of dues for such expenditures clearly contravenes Section 401(g) of the Act and might render the court-ordered election vulnerable to later attack.

No provision of the Act grants this Court specific power to enjoin violations of the Act even though the Court's

jurisdiction has been properly invoked to set aside the invalid election. But in a suit under Section 401 the Court sits as a court of equity. The powers of such a court are not narrowly circumscribed where jurisdiction is otherwise clearly present.

"When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in the light of statutory purposes." Mitchell v. De Mario Jewelry (1963), 361 U.S. 288, 291–292, 80 S.Ct. 332, 335, 4 L. Ed.2d 323.

Thus the absence of a specific statutory authorization is not determinative. When the Court's jurisdiction is an equitable one

" * * * Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. * * * [T]he court may go beyond the matters immediately underlying its equitable jurisdiction * * * and give whatever other relief may be necessary under the circumstances.

Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." Porter v. Warner Holding Co. (1946), 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (Emphasis added).

The application of this broad equitable jurisdiction under the Act in question is demonstrated by Wirtz v. Local 1752, Int'l. Longshoremen's Assn. (S.D.

Miss.1963) 49 CCH Lab.Cas.Tl 18,998. There the traditional equity power of the Court was relied upon to protect the membership status of the complainant following the commencement by the Secretary of Labor of an action under Section 401 but before a determination of the merits of the suit. Acting in order to maintain the status quo the Court enjoined, pendente lite, discrimination against the complainant in the exercise of his rights of membership in the defendant union and interference with employment rights emanating from his union status. To do otherwise, the Court reasoned, would be to leave the complainant at the whim of the incumbent leadership whose status was under attack in the principal action. Such a situation could well frustrate the entire purpose of the Act since prospective complainants might well choose to endure the yoke of unfairly effective leadership rather than risk the loss of union status, employment or both.

The instant case does not involve discrimination against a complainant or against opposing candidates. The improper expenditure of funds is no less likely, however, to frustrate the purposes of the Act. Moreover, the restitution of funds improperly expended is equally a proper equitable remedy where relief is in order. See Highway Truck Drivers & Helpers Local 107, Int'l Bhd. of Teamsters v. Cohen (E.D.Pa.1963), 215 F. Supp. 938, affirmed 3 Cir., 334 F.2d 378, cert. denied 379 U.S. 921, 85 S.Ct. 277, 13 L.Ed.2d 335.

The situation here presents a compelling case for the exercise of the Court's equitable jurisdiction and the granting of injunctive relief. For the election in question has already been found to be void; a new election was ordered and conducted and now is pending certification by the Secretary; the activity sought to be enjoined gives to the improperly elected incumbent officers the advantage of using union funds to promote their candidacy while other candidates must rely on personal funds or on contributions by friends or

associates; such expenditures are expressly prohibited by the Act.

A permanent injunction formalizing the Court's oral ruling of March 31, 1967, will issue restraining further violations of Section 401(g) and ordering repayment by President John I. Kennedy of the sum of $75.00, an amount not in excess of the total value of expenditures improperly used to promote the candidacy of the incumbent officers.