**Joseph A. YABLONSKI, Plaintiff,**

v.

**UNITED MINE WORKERS OF AMERICA et al., Defendants.**

**Civ. A. No. 2413–69.**

United States District Court
District of Columbia.

*Sept. 15, 1969.*

Findings and Conclusions Sept. 19, 1969.

Joseph L. Rauh, Jr., Washington, D. C., for plaintiff.

Paul R. Connolly, Washington, D. C., for defendants.

## MEMORANDUM

PRATT, District Judge.

On August 26, 1969, plaintiff filed a complaint, the gravamen of which is that defendant Boyle, President of the United Mine Workers of America (UMW) and defendant McCarthy, Editor of the UMW Journal (Journal) are using the Journal as a propaganda organ to advance defendant Boyle's candidacy for reelection as President of the UMW. This is alleged to be in violation of several provisions of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA). Jurisdiction is claimed under Section 401(c) and Section 501 of said Act (29 U.S.C. §§ 481(c) and 501). On August 28, 1969, and after a hearing, Judge Waddy of this Court issued a temporary restraining order holding that a *prima facie* case had been made by plaintiff and enjoining defendants "from using the membership lists of the defendant United Mine Workers to discriminate against plaintiff by the utilization of the United Mine Workers Journal as a campaign instrument in favor of defendant Boyle." Defendants appealed promptly and the United States Court of Appeals for the District of Columbia affirmed the grant by Judge Waddy of the temporary restraining order.

This matter is now before this Court upon plaintiff's motion for a preliminary injunction directing that the defendants:

(1) provide plaintiff Yablonski with sufficient space in future issues of the Journal to present his positions and actions to the membership until such presentation neutralizes the alleged previous presentations of defendant Boyle's positions and actions;

(2) provide equal space and treatment for plaintiff Yablonski in future issues of the Journal until the election takes place;

(3) in carrying out the above, print copy supplied by plaintiff Yablonski to constitute the entire first half of the is-

sue of September 1, 1969, and the entire first half of the issue of September 15, 1969, the remainder of said issues to require fair and equal treatment to plaintiff Yablonski and defendant Boyle; and

(4) provide plaintiff Yablonski with final proof of each forthcoming edition 72 hours prior to printing.

## JURISDICTION TO GRANT RELIEF

■ Several criteria must be met to establish jurisdiction to issue a preliminary injunction. Virginia Petroleum Jobbers Assn. v. F.P.C., 104 U.S.App.D. C. 106, 110, 259 F.2d 921, 927 (1958); see also A Quaker Action Group v. Hickel, U.S.App.D.C. (slip opinion, June 24, 1969). The first is whether the plaintiff can establish, by a preponderance of the evidence, that he is likely to succeed ultimately when the case is tried on its merits. This, in turn, is dependent on whether (1) defendants have been shown to have used the Journal as a campaign instrument in behalf of the candidacy of defendant Boyle and thereby discriminated in the use of said membership lists to distribute said Journal, and (2) assuming that such has been demonstrated, whether there is relief which can be granted by the Court.

After hearing testimony and upon examination of numerous exhibits, some of considerable volume, we find that the defendants have used the Journal as a campaign instrument in favor of defendant Boyle. This is a judgment decision which is made with full appreciation of the character of the Journal and similar publications of other national unions. We are aware that defendant Boyle, as the President of the union running for reelection, will in the nature of things be an important participant in many matters of interest to the membership and be more likely to have his participation in these matters the subject of inclusion in any report to the membership through the Journal. A line must be drawn between the use of the Journal to report the activities of defendant Boyle as President, which is permissible, and the use of the Journal, in such a way in reporting such activities, as to promote the candidacy of said defendant. We find that this line has been breached and that the Journal in many respects has been used as a campaign instrument to promote defendant Boyle's candidacy.

■ In support of this conclusion, we cite specifically the excessive coverage, column-wise and pictorially, given to defendant Boyle, in relation to the coverage of other matters contained in the Journal; and the failure since May 29, 1969, to make any reference to plaintiff's activities as an Acting Director of Labor's Non-Partisan League, to his candidacy for President, and, except for the report on nominations (Journal, August 15, 1969, page 3) to even mention plaintiff by name. It is no answer to say that the format and style of the Journal have always been the same and have not changed since May 29, 1969 or that such format and style are not much different than those of other union publications. The fact is that, in the context of a bitterly contested election, the contents and emphasis of a union periodical such as the Journal must be judged in the light of the Landrum-Griffin Act. It should be understood that this Court is not attempting to tell the Journal what it can and cannot print; this would violate the First Amendment and is beyond our statutory authority. Irrespective of the question of remedy, it is our conclusion that the conduct of defendants is in violation of Section 401(c) of the LMRDA and that plaintiff has made a strong showing that he is likely to prevail on the merits.

■■ The remaining criteria may be briefly discussed. The plaintiff will be irreparably injured and has no adequate remedy at law. The machinery set forth in Section 402 which provides for the filing of a complaint with the Secretary of Labor, who after investigation and finding of probable cause may sue to set aside the election, is cumbersome, doubtful, and calls for delay. It is not an ad-

equate remedy for the wrongs which plaintiff is presently suffering. Further, the issuance of injunctive relief will not be harmful to others. Finally, the public interest in fair union elections as expressed in the Landrum-Griffin Act is clearly on the side of injunctive relief. The standards prerequisite to the issuance of an injunction have been met in this case.

## THE RELIEF TO BE GRANTED

The LMRDA, the Landrum-Griffin Act of 1959, amended the Taft-Hartley Act of 1947 and was designed to eliminate certain improper practices on the part of labor unions and employers, including officers and representatives, which interfere with the holding of fair union elections. It attempted to combine a reluctance to interfere in the internal affairs of unions and its philosophy of furthering democratic procedures in union elections through the device of giving much of its enforcement procedure to the Secretary of Labor, acting upon a complaint *after* an election has been held. This is true with respect to Title IV of the Act, which includes Sections 401, 402, and 403 (29 U.S.C. Sections 481, 482, and 483). Section 402(c) permits a direct suit by a candidate to enjoin certain violations, but the balance of the provisions of Section 401 are to be enforceable through a complaint to be filed by the candidate with the Secretary of Labor. Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

With this brief background for the purpose of the legislation, it is clear that the specific injunctive relief requested by plaintiff (see page 871 F. Supp. hereof) cannot be granted by this Court for several reasons:

■ (1) The relief requested would in effect require defendants to print certain material supplied by plaintiff. As desirable as this might be from a public interest and union viewpoint, such requirement would be a clear violation of the First Amendment insofar as it re-

lates to the freedom of the press. Citation of cases should be unnecessary.

■ (2) This Court lacks the statutory authority to compel this action. Section 401(c), which permits suits by candidates to achieve certain results, does not authorize this type of relief.

■ (3) Section 401(g), which prohibits the use of union funds to promote the candidacy of any person and therefore would make unlawful the use of union funds to support publication of the Journal when used as a campaign instrument, does not confer this authority. This is because actions for violations of Section 401(g) are enforceable only through suit by the Secretary of Labor under Section 402. Wirtz v. Independent Workers Union of Florida, 272 F. Supp. 31 (M.D.Fla.1967) ; see also Wirtz v. Hotel, Motel and Club Emp. Union, Local No. 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1964).

■ (4) To grant the injunctive relief requested by plaintiff might be to compel defendants to commit further violations of Section 401(g).

■ The "fairness doctrine" of the *Red Lion* case infra, is not applicable. The airwaves are part of the public domain and the Federal Communications Commission in granting a private monopoly to a broadcasting station may properly condition such a grant. A union newspaper or periodical has a specialized circulation and is not in the public domain.

In summary, the specific relief requested by plaintiff, however desirable it would appear to be in the interests of promoting fair and democratic union elections, is beyond our statutory authority to grant and involves serious constitutional questions under the First Amendment.

■ On the other hand, we have previously found by a preponderance of the evidence that the UMW Journal has been used as a campaign instrument to promote the candidacy of defendant Boyle. Since the distribution of the

Journal utilizes the membership lists of the UMW, such a use of such membership lists is a discrimination in favor of the candidacy of defendant Boyle as against the candidacy of plaintiff Yablonski. This is the relief contained in the temporary restraining order and this Court is prepared to order such relief by way of preliminary injunction. The burden will be on the defendants to refrain from discrimination in the use of the membership lists. Since this concerns the present style and format of the Journal, it would appear that fair and comparable treatment of both candidates in the future would avoid the discriminatory use of the membership lists without violating the provisions of Section 401(g), which prohibit the use of union funds to *promote* the candidacy of any person. This, of course, is a matter for the defendants to decide.

▮▮▮ Fair and comparable treatment or publicity is not promotion of one candidate over another as witness the reporting of political news by newspapers.

We are further prepared to order that defendants use said membership lists to distribute to the union membership the entire text of the findings of fact, conclusions of law and order to be issued in accordance with this memorandum. It is believed that this course will mutually assist in insuring defendants' compliance with the provisions of the order to be entered herein.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND PRELIMINARY INJUNCTION

On August 26, 1969, plaintiff Yablonski filed a verified complaint with attached exhibits, the gravamen of which is that defendant Boyle, President of the United Mine Workers of America (hereinafter referred to as "UMWA") and defendant McCarthy, Editor of the UMWA *Journal* (hereinafter referred to as *"Journal"*) are using the *Journal* as a propaganda organ to advance defendant Boyle's candidacy for reelection as President of the UMWA. This is alleged to

be in violation of several provisions of the Labor-Management Reporting and Disclosure Act of 1959 (hereinafter referred to as "LMRDA"). Jurisdiction is claimed under Sections 401(c) and 501 of said Act (29 U.S.C.A. §§ 481(c) and 501). On August 28, 1969, after a hearing, Judge Waddy of this Court issued a temporary restraining order holding that a *prima facie* case had been made by plaintiff and enjoining defendants "from using the membership lists of the defendant United Mine Workers to discriminate against plaintiff by the utilization of the United Mine Workers *Journal* as a campaign instrument in favor of defendant Boyle." Defendants appealed promptly and the United States Court of Appeals for the District of Columbia affirmed the grant by Judge Waddy of the temporary restraining order.

This matter is now before this Court upon plaintiff's motion for a preliminary injunction directing that the defendants:

(1) provide plaintiff Yablonski with sufficient space in future issues of the *Journal* to present his positions and actions to the membership until such presentation neutralizes the alleged previous presentations of defendant Boyle's positions and actions;

(2) provide equal space and treatment for plaintiff Yablonski in future issues of the *Journal* until the election takes place;

(3) in carrying out the above, print copy supplied by plaintiff Yablonski to constitute the entire first half of the issue of September 1, 1969, and the entire first half of the issue of September 15, 1969, the remainder of such issues to require fair and equal treatment to plaintiff Yablonski and defendant Boyle; and

(4) provide plaintiff Yablonski with final proof of each forthcoming edition 72 hours prior to printing.

After hearing testimony and upon the basis of said testimony, exhibits and affidavits received in evidence at the hear-

ing of this motion, this Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff, Joseph A. Yablonski, is a member in good standing of the UMWA, a member of its International Executive Board, and Acting Director of its Labor's Non-Partisan League. Plaintiff announced his candidacy for President of the UMWA on May 29, 1969, and has been duly nominated for that office, the election for which will be held on December 9, 1969.

2. Defendant, United Mine Workers of America, is a labor organization within the meaning of sections 3(i) and (j) of the Labor-Management Reporting and Disclosure Act of 1959, also known as the Landrum-Griffin Act (29 U.S.C.A. §§ 402(i) and (j)).

3. Defendant, W. A. ("Tony") Boyle, is currently the International President of defendant UMWA, has announced his candidacy for reelection and has been duly nominated for that office in said election.

4. Defendant, Justin McCarthy, is currently editor of the *United Mine Workers Journal*, the official publication of the UMWA, which is published on the 1st and 15th of each month, and distributed by use of the UMWA membership lists. Defendant McCarthy is also publicity director of the UMWA.

5. All three defendants maintain their principal offices within the District of Columbia.

6. Defendants Boyle and McCarthy have used the *Journal* as a campaign instrument in favor of the candidacy of defendant Boyle. Examination of the five recent editions of the *Journal* published between plaintiff's announcement of his candidacy on May 29, 1969 and the institution of this suit, shows excessive coverage, column-wise and pictorially, given to defendant Boyle in relation to the coverage of other matters contained in the *Journal*. This includes 166 references to defendant Boyle, most of them in bold-face type, as well as 16 pictures of defendant Boyle. In contrast, the *Journal* during this period contained no references to plaintiff's activities as Acting Director of Labor's Non-Partisan League, as a member of the International Executive Board, or as to his candidacy for President, and except for the report on nominations (*Journal*, August 15, 1969, page 13), failed even to mention plaintiff by name. This finding that defendants Boyle and McCarthy have used the *Journal* as a campaign instrument in favor of the candidacy of defendant Boyle is made with full appreciation of the fact that defendant Boyle, as the President of the UMWA running for reelection, will in the nature of things be an important participant in many matters of importance to the membership and be more likely to have his participation in these matters the subject of inclusion in any report to the membership through the *Journal*.

7. Defendant McCarthy, editor of the *Journal*, is subject to the control and direction of defendant Boyle and other members of the International Executive Board in the exercise of his functions as editor. Defendant McCarthy, as editor of the *Journal*, has had immediate control over its contents, emphasis, editorial policy, and must share in the responsibility for the use of the *Journal* as a campaign instrument on behalf of defendant Boyle's candidacy.

8. Defendants Boyle and McCarthy have discriminated in favor of the defendant Boyle and against the plaintiff Yablonski in the use of the membership lists of the UMWA to distribute issues of the *Journal* as a campaign instrument in favor of the candidacy of defendant Boyle.

9. Plaintiff is likely to succeed ultimately when the case is tried on the merits because a preponderance of the evidence shows the defendants have discriminated against plaintiff by their actions previously set forth.

10. As a result of the said actions of defendants Boyle and McCarthy, plain-

tiff has suffered irreparable injury, is threatened with further irreparable injury and has no adequate remedy at law.

11. The public interest in fair union elections, as reflected in the Landrum-Griffin Act, will be furthered by the granting of injunctive relief.

12. There are no countervailing considerations of public or private policy which militate against the issuance of injunctive relief.

*Conclusions of Law*

■■■ 1. This Court has jurisdiction to grant injunctive relief in order to restrain continued use of the membership lists in a manner discriminatory to plaintiff. 29 U.S.C.A. § 481(c).

2. The criteria for granting preliminary injunctive relief have been met in this case. Virginia Petroleum Jobbers Ass'n v. F.P.C., 104 U.S.App.D.C. 106, 110; 259 F.2d 921, 927 (1958); see also A Quaker Action Group v. Hickel, U.S. App.D.C. (slip opinion, June 24, 1969).

3. The use of the *Journal* to discriminate in favor of the candidacy of defendant Boyle constitutes a discriminatory use of the union's membership list, employed in the *Journal's* distribution, in violation of 29 U.S.C.A. § 481(c).

4. The specific relief requested by plaintiff (page 871 F.Supp. *supra*) cannot be granted because:

(a) It would require this Court to order defendants to print copy supplied by plaintiff, in clear violation of the First Amendment's guarantee of freedom of the press;

(b) 29 U.S.C.A. § 481(c), upon which plaintiff relies for this Court's jurisdiction to consider his claim, does not authorize this type of relief;

(c) 29 U.S.C.A. § 481(g), which prohibits the use of union funds to promote the candidacy of any person and therefore makes it unlawful to use union funds to supply publication of the *Journal* when used as a campaign instrument, is enforceable only through suit by the Secretary of Labor under Section 482, and thus does not confer authority upon this Court to grant such remedy. Wirtz v. Independent Workers Union of Florida, 272 F.Supp. 31 (M.D.Fla.1967); see also Wirtz v. Hotel, Motel and Club Emp. Union, Local No. 6, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1964).

(d) If this Court were to grant the requested relief, it might be to compel defendants further to violate the provisions of 29 U.S.C.A. § 481(g).

(e) The F.C.C. "fairness doctrine," upheld by the Supreme Court in Red Lion Broadcasting v. F.C.C., 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), is applicable only to radio and television broadcasting media and is not applicable to this case.

5. Fair and comparable treatment of the activities of both plaintiff Yablonski and defendant Boyle in the future will not only avoid the present discriminatory use of the membership lists of the UMWA in violation of 29 U.S.C.A. § 481(c) but also will not run counter to the provisions of 29 U.S.C.A. § 481(g) which prohibits the use of union funds to promote the candidacy of any person.

PRELIMINARY INJUNCTION

Pursuant to this Court's Memorandum of September 15, 1969, and the Findings of Fact and Conclusions of Law issued this day, it is ordered, adjudged and decreed, that:

1. The defendants, the United Mine Workers of America, W. A. (Tony) Boyle and Justin McCarthy, are enjoined and restrained from discrimination in the use of the membership lists of the United Mine Workers of America, for or against any candidate for any office in the United Mine Workers of America; and specifically they are ordered to refrain from discrimination in the use of said membership lists in the distribution of the United Mine Workers *Journal* as a campaign instrument in favor of the candidacy of defendant W. A. (Tony) Boyle, for the office of President of the United Mine Workers of America.

2. The defendants shall use the UMWA membership lists to distribute

to the union membership on or before October 1, 1969, the entire text of these Findings of Fact, Conclusions of Law and Order.

3. This preliminary injunction shall be in force until a trial of this case on the merits has been held or until modified or dissolved by this Court, or until the election is held on December 9, 1969, whichever first occurs.

4. The present bond posted under the temporary restraining order shall remain in effect to cover damages and costs incurred by defendants should they prevail on the merits.