503 F.2d 219
 87 L.R.R.M. (BNA) 2171, 74 Lab.Cas. P 10,241
 James D. HODGSON, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee, and Angel
Roman, Intervenor-Appellee,
v.
INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE
WORKERS, AFL-CIO, AMALGAMATED MACHINE, INSTRUMENT
AND METAL LOCAL 485, Defendant-Appellant.
 No. 1158, Docket 74-1472.
 United States Court of Appeals, Second Circuit.
 Argued May 24, 1974.
Decided Aug. 2, 1974.
 
 Anthony J. Steinmeyer, Atty., Dept. of Justice, Washington, D.C. (Carla A. Hills, Asst. Atty. Gen., Robert E. Kopp, Atty., Dept. of Justice, Washington, D.C., Edward J. Boyd, U.S. Atty., and Harold J. Friedman, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for plaintiff-appellee Secretary of Labor.
 Stephen C. Vladeck, New York City (Everett E. Lewis, Robert L. Jauvtis and Vladeck, Elias, Vladeck & Lewis, New York City, on the brief), for defendant-appellant Local 485.
 Before SMITH and TIMBERS, Circuit Judges, and TYLER, District Judge.*
 TIMBERS, Circuit Judge:
 
 
 1
 On this appeal from orders entered March 13, 1974 and April 5, 1974 in the Eastern District of New York, John F. Dooling, Jr., District Judge, which (1) invalidated a local union's 1970 election for the office of business manager, (2) directed that a new election for that office be held under the supervision of the Secretary of Labor, and (3) required that the incumbent union business manager and all union business agents or organizers who intend to seek that office resign at least thirty days prior to the supervised re-election, the principal issues are whether the record supports the district court's determination that the contested 1970 election was not conducted in accordance with the union constitution as required by 401(e) of the Labor Management Reporting and Disclosure Act (the Act), 29 U.S.C. 481(e) (1970), and whether, having invalidated the election, the district court was authorized, pursuant to 402(c) of the Act, to order resignations prior to the supervised re-election. The latter question appears to be one of first impression.
 
 
 2
 We affirm.
 
 I.
 
 3
 The facts are not in dispute and may be briefly summarized.
 
 
 4
 In September 1969, the officers of Amalgamated Machine, Instrument and Metal Local 485 of the International Union of Electrical, Radio and Machine Workers, AFL-CIO (Local 485) unanimously appointed one Hamilton Archer to serve as the union's temporary business manager until the next regularly scheduled union election in February 1970.[1] In October, Archer's appointment was ratified by Local 485's executive board. The general membership, however, was not afforded an opportunity to participate in Archer's interim appointment.
 
 
 5
 Prior to his appointment as temporary business manager, archer had served for three years as one of Local 485's business agents. In this appointive capacity, he had rendered various services to a number of shops represented by the union. Such services included participation in contract negotiations and the hearing and consideration of union member grievances. In addition, Archer had been active in the recruiting and organizing of new union members. After his appointment as temporary business manager, Archer did not resign as one of Local 485's business agents, but he continued to render services in that capacity to many of the shops he had previosly served and continued formally to be recognized by the union as a 'business agent-only'. He did devote a substantial portion of his time, however, to the executive functions of business manager.
 
 
 6
 At a general meeting of the union membership on December 18, 1969, Archer was formally nominated for the office of business manager. Although others had expressed an interest in running, he was the only formal nominee for the office. At the same meeting, intervenor Angel Roman and another individual, both of whom were then business agents of the union, were nominated for the union's offices of Corresponding and Recording Secretary and Vice President, respectively. Their nominations, however, were ruled out of order on the ground that Article XI, Section 7, of Local 485's constitution declares incumbent business agents ineligible for elective office.[2]
 
 
 7
 The union elections were held on February 24, 1970. Archer and 'his' slate of candidates ran unopposed and were elected.
 
 
 8
 On February 26, 1970, two days after the election, Roman, along with eight other union members, filed a formal written protest with Local 485's executive board challenging Archer's election. The gravamen of the challenge was that Roman and the vice presidential candidate had been discriminated against because, as business agents, they had not been permitted to run for elective office, whereas Archer, who after his appointment as business manager had continued to function as a business agent and at the time of the election was officially recognized by the union as such, was permitted to run.
 
 
 9
 After exhausting available internal union remedies without success, Roman filed a complaint with the Secretary of Labor pursuant to 402(a) of the Act. He charged that Archer's election had not been conducted in accordance with Article XI, Section 7, of the union constitution, as required by 401(e) of the Act. The Secretary investigated Roman's complaint and found probable cause to believe that there had been a 401(e) violation. On August 8, 1970, pursuant to 402(b) of the Act, the Secretary commenced the instant action in the district court seeking a declaration that Archer's election was invalid and an order directing that a new supervised election be held.
 
 
 10
 After a bench trial, the district court filed a comprehensive opinion which included detailed findings of fact and conclusions of law. The crux of the court's holding was that, since Archer 'continued to be a Business-Agent-only as a matter of Internal Local Management, record-keeping, and compensation' after his appointment as business manager and since he was functioning as a business agent at the time of the February 1970 elections, he was ineligible under the union constitution for election to the office of business manager. The court further held that Archer's initial appointment was unlawful as contrary to the spirit, if not the letter, of the union constitution.
 
 
 11
 Accordingly, pursuant to 402(c) of the Act, the court voided Archer's election and directed that a supervised re-run be held at Local 485's regularly scheduled membership meeting in September 1974. The court further ordered Archer, who had been re-elected as business manager in 1972,[3] and the organizers or business agents of the union who intend to run for that office, to resign their posts at least thirty days prior to the September re-run.
 
 II.
 
 12
 On appeal Local 485 does not challenge the factual findings on the basis of which the district court concluded that Archer was a business agent at the time of his February 1970 election and therefore was ineligible under Article XI, Section 7, of the union constitution to run for the position of business manager. Rather, it focuses on the validity of Archer's interim appointment. It contends that, since Archer was Local 485's de facto business manager at the time of the contested election, he could not also have been a business agent as a matter of law. It claims therefore that he was not subject to disqualification under the union constitution.
 
 
 13
 In support of its position, the union advances two arguments. First, it argues that Archer's status in February 1970 was not open to challenge by the Secretary because of the failure of any union member to file a timely protest to Archer's September 1969 appointment as required by 402(a) of the Act. Second, it argues that Archer's appointment was expressly authorized by Department of Labor Regulations which render such an appointment exempt from scrutiny by the Secretary in a 402 action.[4] For the reasons below, we hold that the union's arguments are based on a fundamental misconstruction of the applicable statute and regulations.
 
 
 14
 Contrary to the union's assertions, neither Roman's internal union protest nor the Secretary's 402 complaint, which was predicated on the protest, challenges the validity of Archer's interim appointment as such. Neither, for example, seeks to invalidate any of Archer's official actions during his de facto incumbency. Rather, the theory advanced by the Secretary is that Local 485 violated Article XI, Section 7, of its constitution and imposed discriminatory candidate eligibility requirements on Roman by disallowing his nomination on the ground that he was subject to the business agent disqualification, but permitting Archer to run in spite of the fact that he was formally recognized and continued to function as a business agent.
 
 
 15
 This complaint, as opposed to one questioning the propriety of Archer's appointment as such, unquestionably was presented to Local 485's executive board and was appealed unsuccessfully through union channels as required by 402(a). This clearly is not a case, as the union suggests, where the self-regulatory policies of the Act have been frustrated because a claim of union wrong-doing was presented and developed by the Secretary rather than by aggrieved union members. Compare Hodgson v. Local 6799, United Steel Workers, 403 U.S. 333, 337-41 (1971); Wirtz v. Local 191, Teamsters, 321 F.2d 445, 448 (2 Cir. 1963). Nor was there any frustration of the union appellate process here. Compare Calhoon v. Harvey, 379 U.S. 134, 140 (1964).
 
 
 16
 Moreover, the Department of Labor Regulations referred to above are relevant only if, as the union claims, Archer's de facto incumbency as business manager relieved him of the business agent disability. We hold that it did not.
 
 
 17
 As stated above, the union does not challenge the district court's findings that Archer was both formally and functionally a business agent in February 1970. In effect, Local 485 concedes that Archer performed in the capacities of both business agent and business manager when he was elected to the latter office. It has not offered any explanation, however, by way of precedent or policy as to why one so situated should not have been subject to the business agent disqualification. We have found none.
 
 
 18
 On the contrary, the provision in the union constitution which sought to divorce business agents from union politics clearly was intended to avoid the possibility that business agents might use their position-- with close contacts with the membership-- to gain an unfair advantage in union elections. The fact that Archer occupied the office of business manager at the same time that he functioned as a business agent did not automatically mitigate the unfair advantage which Article XI, Section 7, of the union constitution was intended to prevent.
 
 
 19
 In short, we hold that, whether or not Archer was Local 485's business manager at the time of his election to that post, he also was one of its business agents. As such, he, like Roman, was ineligible under the union constitution to stand for election.
 
 III.
 
 20
 Local 485 also claims that the district court lacked authority under 402(c) to order the resignation of Archer and those of the union's organizers and business agents who intend to run for business manager prior to the supervised rerun. The Secretary claims, on the other hand, that such a remedy is contemplated by the general language of 402(c) and is necessary and appropriate here to insure a fair election.
 
 
 21
 Section 402(c) provides that where, as here, a union election is found to have been conducted in violation of 401, the court must set aside the contested election and direct that a new election be held under the supervision of the Secretary and in conformity with the constitution of the union and the requirements of Title IV of the Act. See Trbovich v. United Mine Workers, 404 U.S. 528, 537 n. 8 (1972).
 
 
 22
 In ordering the organizers and business agents of Local 485 who intend to run for the office of business manager to resign prior to the scheduled re-run, the court properly followed the mandate of 402(c) in endeavoring to insure that the supervised election would be conducted in accordance with Article XI, Section 7, of the union constitution. In fact, by permitting such individuals to remain as business agents or organizers until thirty days prior to the new election, the court construed that provision of the union constitution more favorably toward the prospective candidates than had Local 485 which disallowed Roman's nomination because he continued to be a business agent until approximately two months before the February 1970 election.
 
 
 23
 Furthermore, in ordering Archer to resign as business manager,[5] the court did no more than exercise the inherent equitable powers conferred by 402(c), see Wirtz v. Independent Workers Union of Florida, 272 F.Supp. 31, 33-34 (M.D.Fla.1967); cf. Mitchell v. De Mario Jewelry, Inc.,361 U.S. 288, 291-92 (1960); Porter v. Warner Holding Co., 328 U.S. 395, 398 (1946), to deprive Archer of the benefits of his ill-gotten incumbency and to prevent 'the unfairness of the first election from infecting, directly of indirectly, the remedial election.' Wirtz v. Local 153, Glass Bottle Blowers Assn., supra, 389 U.S. at 474. In view of the fact that a one month vacancy in the office of business manager will have no adverse effect on the union (the post had been lift vacant for two years prior to Archer's initial appointment) but will tend to promote an untainted re-run, we hold that the court did not abuse its discretion in directing Archer's resignation.
 
 
 24
 Local 485 contends, however, that the resignation provision of the court's order is in conflict with 402(a) which provides that:
 
 
 25
 'The challenged election shall be presumed valid pending a final decision thereon . . . and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.'
 
 
 26
 The union argues that a 'final decision' on the election occurs only when a court enters an order pursuant to 402(c) certifying the results of the new election. On the other hand, the Secretary maintains that the phrase refers to a judicial decision on the validity of the contested election.
 
 
 27
 This question appears to be one of first impression. We believe that the Secretary's construction of the phrase is consistent with the legislative history of 402(a):
 
 
 28
 'Since union business must not be brought to a standstill whenever an election is challenged, it is necessary to make some provision for the conduct of business while the proceeding is in progress. It would be intolerable for the Government to appoint outsiders to act as receivers. The choice lay between keeping the old officers in office or allowing the new officers to enter upon their duties even though their right may be challenged. The latter course seems preferable. A union election should be presumed valid until the contrary can be reasonably established.'
 
 
 29
 S.Rep.No. 187, 86th Cong., 1st Sess. 22 (1959), quoted in 2 U.S. Code Cong. & Admin. News 2338 (1959).
 
 
 30
 Moreover, the fact that 402(d) renders a judicial order invalidating a union election and directing that a new one be held 'appealable in the same manner as a final judgment' strongly supports the Secretary's position that the district court's determination of a 401(e) violation constituted a 'final decision'.
 
 
 31
 We hold that the district court was empowered to order resignations prior to the supervised re-election and that it acted well within its discretion in doing so here.
 
 
 32
 Affirmed.
 
 
 
 *
 Hon. Harold R. Tyler, Jr., of the Southern District of New York, sitting by designation
 
 
 [1]
 The office of business manger is the union's highest executive position. The office deliberately had been left vacant since 1967
 
 
 [2]
 Article XI, Section 7, of the union constitution provides in pertinent part:
 'A Local Organizer or Business Agent shall not be eligible for election to any office in the Local while he is an Organizer or Business Agent.'
 
 
 [3]
 The fact that Archer was reelected as business manager in 1972 in an unsupervised election, conducted during the pendency of the instant action, does not render moot the Secretary's challege to the prior election. Wirtz v. Local 153, Glass Bottle Blowers Assn., 389 U.S. 463, 474 (1968)
 
 
 [4]
 Archer's predecessors in office had been appointed and then elected in the same manner as was Archer. The union constitution has no provision for filling an office deliberately left vacant
 The Department of Labor Regulations relied on by Local 485 to validate Archer's appointment provide:
 '452.25 Vacancies in office.
 Title IV governs the regular periodic elections of officers in labor organizations subject to the Act. No requirements are imposed with respect to the filling by election or other method of any particular office which may become vacant between such regular elections. If, for example, a vacancy in office occurs in a local labor organization, it may be filled by appointment, by automatic succession, or by a special election which need not conform to the provisions of Title IV.'
 '452.3 Interpretations of constitution and bylaws.
 The interpretation consistently placed on a union's constitution by the responsible union official or governing body will be accepted unless the interpretation is clearly unreasonable.'
 
 
 [29]
 C.F.R. 452.25 and 452.3 (1974)
 In view of the grounds of our decision, we need not consider the question of the validity of Archer's interim appointment.
 
 
 [5]
 We assume that Archer intends to seek renomination as business manager