Jerry BLISS, Frank Savage, et al., Plaintiffs-Appellants,

v.

Robert F. HOLMES, Sr., President, Local 337, et al., Defendants-Appellees.

No. 83–1672.

United States Court of Appeals, Sixth Circuit.

Submitted on Motion Oct. 3, 1983.

Decided Oct. 6, 1983.

On Motion for Reconsideration Oct. 17, 1983.

Barbara Harvey (argued), Detroit, Mich., for plaintiffs-appellants.

Jerome S. Coleman, Coleman, Lipson & Bradford, Farmington Hills, Mich., Gerry M. Miller (argued), Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, Milwaukee, Wis., for defendants-appellees.

Before KEITH, KENNEDY and CONTIE, Circuit Judges.

PER CURIAM.

Plaintiff Bliss is a candidate for office of president of defendant Local 337, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Plaintiff Savage is a candidate for vice president. They allege that the excessive publicity given to Robert F. Holmes and Lawrence Brennan, incumbent president and vice president of Local 337, in the union newsletter, "TEAM 337", is an impermissible use of the membership lists and union funds by defendants in violation of 29 U.S.C. § 481(c) and § 481(g).

Plaintiffs sought an injunction against use of the newsletter as campaign literature for the incumbents while denying them reasonable mention.

The District Court found nothing unusual in the union newsletter devoting the bulk of its attention to incumbent officers. It also held that plaintiffs could obtain adequate relief in the post-election remedy of having the election set aside. Concerned with avoiding entanglement in union affairs and interfering with the local union's first amendment rights, it denied injunctive relief.

We share the District Court's first amendment concerns as well as its concern that the courts refrain from involving themselves in internal union controversies when possible. However, Congress adopted § 481(c) and (g) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 481(c) ("LMRDA"), to maintain democratic and fair conduct in election of union officials and expressly gave the right to enforce LMRDA guarantees in the federal courts.

## § 481. Terms of office and election procedures

(c) Every national or international labor organization, except a federation of national or international labor organizations, and every local labor organization, and its officers, shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States in which such labor organization maintains its principal office, to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members, and whenever such labor organizations or its officers authorize the distribution by mail or otherwise to members of campaign literature on behalf of any candidate or of the labor organization itself with reference to such election, similar distribution at the request of any other bona fide candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution. Every bona fide candidate shall have the right, once within 30 days prior to an election of a labor organization in which he is a candidate, to inspect a list containing the names and last known addresses of all members of the labor organization who are subject to a collective bargaining agreement requiring membership therein as a condition of employment, which list shall be maintained and kept at the principal office of such labor organization by a designated official thereof. Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots.

(g) No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.

■ Once a member's candidacy is announced, if the union uses the union mailing lists to mail a newsletter the newsletter must refrain from discrimination in favor of or against any candidate. A "[n]ewsletter laudatory of the incumbent President and derogatory of his opponent paid for by the Union and distributed from its mailing list was prohibited campaign literature in violation of Section 481(g). See *Hodgson v. Liquor Salesmen's Union Local No. 2,* 334 F.Supp. 1369, 1377 (S.D.N.Y.), *aff'd,* 444 F.2d 1344 (2 Cir.1971); *Wirtz v. Independent Workers Union of Florida,* 272 F.Supp. 31 (M.D.Fla.1967)." *Usery v. International Organization of Masters, etc.,* 538 F.2d 946, 949 (2d Cir.1976).

■ After plaintiff Bliss announced his candidacy for president of Local 337 in May 1983 and incumbent president, Holmes, announced his intention to run for re-election in the May, 1983 issue of "TEAM 337", the union was required to refrain from discrimination in favor of or against any candidate. The publication is paid for by the union and uses the union's membership lists for distribution. Our review of the May, June, July, and September issues of "TEAM 337"[1] discloses numerous pages devoted to laudatory articles about the incumbent president and numerous columns by both the incumbent president and vice president, the effect of which is to advance their candidacies. No mention is made of plaintiffs Bliss or Savage, except their inclusion in the masthead as secretary-treasurer and trustee. The September issue, which was not available to the District Court, devotes 3 out of a total of 7 pages to President Holmes and Vice President Brennan. We conclude that this excessive publicity, not balanced by any publicity for other candidates, or even an

---

1. We were not provided with a copy of an August, 1983 issue.

announcement of their candidacies, constitutes the distribution of campaign literature for defendants Holmes and Brennan distributed at the expense of the defendant union. *Sheldon v. O'Callaghan,* 335 F.Supp. 325, 327–28 (S.D.N.Y.1971).

Plaintiffs are entitled, therefore, to have a piece of their campaign literature distributed in a similar manner, *i.e.,* at union expense. We, therefore, order that defendant union pay for the mailing of a piece of campaign literature prepared by plaintiffs to be mailed at the same time the September, 1983 newsletter is mailed. The preparation of the literature itself, including folding, if that is necessary for using the union's mailing process, shall be paid for by plaintiffs. Defendant union is required only to pay for the mailing which shall be mailed in the same manner as is the newsletter.

Defendants are further ordered to refrain from discrimination in any further newsletters distributed before the November 1983 election which are prepared and mailed at union expense and use union membership lists. *Yablonski v. United Mine Workers of America,* 305 F.Supp. 868 (D.D.C.1969).

On Motion For Reconsideration

This cause comes before the Court upon the motion of the appellees for a stay and reconsideration of the Court's order of October 6, 1983, requiring appellee Local 337 to mail appellants' campaign literature to the membership, at the Local Union's expense. The appellants have filed a response in opposition to the motion, and oral argument was held on October 13, 1983.

Upon consideration, it is ORDERED that the motion to reconsider the October 6, 1983 order be, and it hereby is, denied. It is further ORDERED that the interim stay of that order is hereby vacated.

KEITH, Circuit Judge, dissenting:

I respectfully dissent. I am convinced after hearing oral arguments in this case that the Teamsters' newsletter, "337", for the months in question, does not contain excessive publicity for President Robert F. Holmes, Vice-President Lawrence Brennan and Richard Leebove. I therefore would vacate the preliminary injunction for the stay heretofore entered on October 6, 1983, and allow defendants-appellees to proceed with the distribution of all election materials. Our Court's decision to grant the stay in this case will have a chilling effect on the First Amendment rights of the officers of Local 337. I feel very strongly that courts should not interfere with the internal operations and politics of unions.