810 F.2d 199
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jerry BLISS, Frank Savage, Richard Matuszewski, and Joseph
Provo, Plaintiffs- Appellants,
v.
Robert F. HOLMES, Sr., President, Local 337, International
Brotherhood of Teamsters, Chauffeurs, Warehousemen and
Helpers of America; Individually and in His Official
Capacity; Lawrence Brennan, Vice President, Local 337
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America; Individually and in
His Official Capacity; Richard Leebove, Publisher, Team
337, a Publication of Local 337, International Brotherhood
of Teamsters, Chauffeurs, Warehousemen and Helpers of
America, Individually and in His Official Capacity, and
Local 337, International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America, a labor
organization, Defendants-Appellees.
 No. 83-1672.
 United States Court of Appeals, Sixth Circuit.
 Nov. 21, 1986.
 
 Before LIVELY, Chief Judge, and WELLFORD and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 This lawsuit continues a long-standing controversy between two opposing factions of the International Brotherhood of Teamsters, Local 337, in Detroit. The plaintiffs, Jerry Bliss, Frank Savage, Richard Matuszewski, and Joseph Provo (hereinafter, "Bliss") were, respectively, two candidates for office in a 1983 local union election, and two of their supporters. The defendants to this lawsuit are Robert R. Holmes, Sr., and Lawrence Brennan, respectively, the president and vice president of the local union; Richard Leebove, publisher of TEAM 337, the local union newspaper; and Local 337 itself.
 
 
 2
 On July 7, 1983, Bliss filed this action against the defendants under Titles IV and V of the Labor Management Reporting Disclosure Act of 1959, 29 U.S.C. Section 401 et seq. (the "Act"), alleging that the defendants had unlawfully used TEAM 337 and the membership's mailing list during the course of the 1983 election in an effort to remain in office. The plaintiffs sought an injunction under Sections 401(c) and 481(c),[1] Title IV of the Act, against the further use of the newspaper and union mailing list for alleged political purposes, and also sought under Section 501,[2] Title V of the Act, a return of union funds allegedly used by the defendants "for personal political goals."
 
 
 3
 On July 25, 1983, the district court denied Bliss's application for a temporary restraining order. On September 19, 1983, the court denied the plaintiffs' motion for a preliminary junction, and granted defendants' motion for summary judgment on the Title IV claim, and their motion for dismiss on the Title V claim. Bliss then appealed to this Court, seeking emergency injunctive relief pending appeal. A three-judge panel of this court[3] stated as follows:
 
 
 4
 Our review of the May, June, July, and September issues of "TEAM 337" discloses numerous pages devoted to laudatory articles about the incumbent president and numerous columns by both the incumbent president and vice president, the effect of which is to advance their candidacies. No mention is made of plaintiffs Bliss or Savage, except their inclusion in the masthead as secretary-treasurer and trustee. The September issue, which was not available to the District Court, devotes 3 out of a total of 7 pages to President Holmes and Vice President Brennan. We conclude that this excessive publicity, not balanced by any publicity for other candidates, or even an announcement of their candidacies, constitutes the distribution of campaign literature for defendants Holmes and Brennan distributed at the expense of the defendant union. Sheldon v. O'Callaghan, 335 F.Supp. 325, 327-28 (S.D.N.Y.1971).
 
 
 5
 Bliss v. Holmes, 721 F.2d 156, 158-59 (6th Cir.1983) (footnote omitted). The panel ordered the defendant union "to pay for the mailing of a piece of [plaintiffs'] campaign literature" and "to refrain from discrimination in any further [union] newsletter distributed before the November 1983 election." Id. at 159.
 
 
 6
 Despite this relief and the occurence of the 1983 elections, plaintiffs continued to press their case in the federal courts. In their appeal to this Court, they raise two issues. First, they, in essence, seek from this Court a declaration that we correctly addressed the case when it was before us on a request for emergency injunctive relief pending appeal (Bliss v. Holmes, 721 F.2d 156 (6th Cir.1983)). Second, plaintiffs also ask for a permanent injunction, forbidding the defendants to engage in the future in the type of pre-election activities that our 1983 order prohibited.
 
 
 7
 Turning first to the injunction issue, we note that this Court granted a pre-election injunction to plaintiffs in our 1983 decision. That injunction prohibited specific acts during a specific time frame. The injunction was granted because plaintiffs were able to exhibit past injury and were able to convince this Court that an injunction would remedy the injuries they suffered during the 1983 election campaign. Now, however, plaintiffs are asking this court for an injunction under entirely different circumstances. They essentially asked for hypothetical relief: relief for hypothetical acts of an uncertain nature which may or may not occur in the future.
 
 
 8
 Although defendants and plaintiffs failed to address the issue of mootness in their appellate briefs or in oral arguments before this court, we hold that this issue is moot. It is well settled that an active "case or controversy" must exist between the parties at all times during the law suit; otherwise, a court may not hear the case. County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979). In general, a case is not moot when there is a probability that it is "capable of repetition yet evading review," Weinstein v. Bradford, 423 U.S. 147, 149 (1975), or when there is a "reasonable expectation" that a similar controversy will in the future arise between the same parties. Ibid.; Gannett Co. v. de Pasquale, 443 U.S. 368, 377 (1979). However, when the terms of a preliminary injunction "have been fully and irrevocably carried out," the question of whether the preliminary injunction should have issued is moot. University of Texas v. Camenisch, 451 U.S. 390, 398 (1981).
 
 
 9
 In the instant case, the terms of the preliminary injunction granted by the earlier panel of this court "have been fully and irrevocably carried out," and plaintiffs have failed to exhibit, with any degree of certainty, that they will be damaged in the future. If, in the future, plaintiffs become "bona fide candidates for office" and believe that defendants are discriminating against them, they may seek redress for their injuries in federal court, but until such time as such injuries arises there is no "case or controversy."
 
 
 10
 Accordingly, the judgment of the district court is AFFIRMED with regard to the Title V claims. The judgment of the district court with regard to the Title IV claims is VACATED AND REMANDED with instructions to dismiss those claims as moot."
 
 
 
 [1]
 Section 401(c), Title IV of the Act, provides as follows:
 (c) Necessity to eliminate or prevent improper practices. The Congress, therefore, further finds and declares that this enactment of the chapter is necessary to eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives which distort and defeat the policies of the Labor Management Relations Act, 1947, as amended [29 U.S.C.A. § 141 et seq.], and the Railway Labor Act, as amended [45 U.S.C.A. § 151 et seq.], and have the tendency or necessary effect of burdening or obstructing commerce by (1) impairing the efficiency, safety, or operation of the instrumentalities of commerce; (2) occurring in the current of commerce; (3) materially affecting, restraining, or controlling the flow of raw materials or manufactured or processed goods into or from the channels of commerce, or the prices of such materials or goods in commerce; or (4) causing diminution of employment and wages in such volume as substantially to impair or disrupt the market for goods flowing into or from the channels of commerce.
 Section 481(c) provides as follows:
 Every national or international labor organization, except a federation of national or international labor organizations, and every local labor organization, and its officers, shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States in which such labor organization maintains its principal office, to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members, and whenever such labor organizations or its officers authorize the distribution by mail or otherwise to members of campaign literature on behalf of any candidate of the labor organization itself with reference to such election, similar distribution at the request of any other bona fide candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution. Every bona fide candidate shall have the right, once within 30 days prior to an election of a labor organization in which he is a candidate, to inspect a list containing the names and last known addresses of all members of the labor organization who are subject to a collective bargaining agreement requiring membership therein as a condition of employment, which list shall be maintained and kept at the principal office of such labor organization by a designated official thereof. Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots.
 
 
 [2]
 Section 501, Title V of the Act, provides in pertinent part that labor union officers occupy fiduciary positions and that they should "hold [the union's] money and property solely for the benefit of the organization...."
 
 
 [3]
 Circuit Judges Keith, Kennedy, and Contie comprised the panel