Joseph A. **YABLONSKI**, Plaintiff,

v.

**UNITED MINE WORKERS OF AMER- ICA et al., Defendants.**

**Civ. A. No. 2413–69.**

United States District Court
District of Columbia.

Nov. 4, 1969.

Joseph L. Rauh, Jr., John Silard, Washington, D. C., for plaintiff.

Paul R. Connolly, Williams & Connolly, Washington, D. C., for defendant.

## MEMORANDUM TO CLARIFY ORDER

PRATT, District Judge.

Upon denial of appellant's motion for summary reversal of this Court's order of September 19, 1969, the United States Court of Appeals for the District of Columbia Circuit remanded the record herein to the District Court, 305 F.Supp. 868:

"for clarification of the scope of the court's order, and its underlying in-

terpretation of section 481(g), with a view to clarifying the latitude available to the parties in complying with the court's order * * * "

■ During oral argument before the Court of Appeals, this Court's view of Section 401(g) of the Landrum-Griffin Act (29 U.S.C. § 481(g) (1964)) was thought to be susceptible of two different interpretations:

(1) The interpretation that the editor of the Mine Workers Journal was precluded "from devoting equal space within the pages of the Journal to nondiscriminatory presentation of the views of the two candidates in their respective campaigns for the presidency of the United Mine Workers of America, at least if prepared by the candidates, and that even such equal treatment would constitute a promotion of candidacy, albeit of both candidates, that is prohibited by Section 481(g)"; and

(2) The interpretation that "the editor of a union journal may lawfully decide to institute a system for airing of the candidates' views, even a presentation prepared by the candidates themselves, so long as this presentation is conducted on a nondiscriminatory basis."

The second view correctly describes our position with respect to the proper interpretation of Section 481(g) in the light of the entire statutory scheme.

■ This Court's thinking may be briefly summarized. As the specific prayers for relief requested by plaintiff show, their thrust was to neutralize the alleged discriminatory treatment of plaintiff in past issues of the Journal and thereafter to provide equal space and treatment for plaintiff in future issues of the Journal. Aside from the implicit First Amendment problems, this Court declined to grant such relief because it lacked statutory authority to do so and because the granting of such relief would be to compel defendant to commit further violations of Section 481 (g) by using union funds to promote the candidacy of any person, in this case

the plaintiff Yablonski. Conclusions of of Law, pp. 5–6, par. 4(c) and (d). At the same time, we concluded that (Conclusions of Law, p. 6, par. 5):

"5. Fair and comparable treatment of the activities of both plaintiff Yablonski and defendant Boyle in the future will not only avoid the present discriminatory use of the membership lists of the UMWA in violation of 29 U.S.C.A. § 481(c) but also will not run counter to the provisions of 29 U.S.C.A. § 481(g) which prohibits the use of union funds to promote the candidacy of any person."

This specific conclusion is a reflection of our thinking contained in our September 15, 1969 Memorandum, pp. 6–7.

The term "fair and comparable treatment," made purposely broad, was designed to permit the union, *if it so desired,* to devote equal space in the Journal to a presentation on a nondiscriminatory basis of news concerning, and the views of, the two candidates, even if the material to be printed were prepared by the candidates themselves. The crucial matter is that the airing of candidates' views be conducted on a nondiscriminatory basis. Since the union Journal would be according "fair and comparable treatment," it is our view that such reporting of the activities of the candidates, i. e., their views and news concerning them, is no more the *promotion of the candidacy of any person* than would be similar reporting by a newspaper of general circulation of the activities of candidates for public office. We do not regard this as inconsistent with the second sentence of Section 481(g) which permits the use of union funds for notices, factual statements of issues not involving candidates and other expenses necessary for holding an election. An examination of the legislative history does not throw any light on this precise question and it appears not to have been the subject of legislative discussion.[1]

I. Apparently, Congress was concerned with the wrongful use of union funds

by an incumbent to promote his own candidacy. Whether a "candidate's page"

 This Court for obvious reasons cannot dictate to the union what it can and cannot print. It can only order that the union refrain from discrimination in the use of the membership lists, which we have done, and to suggest the necessity of according fair and comparable treatment to the plaintiff in the future if such discrimination is to be avoided. So long as the Journal is fair and impartial in its reporting of the activities of candidates and in the space to be accorded for such presentations, the editorial policy of the Journal is not limited by the provisions of Section 481(g). This could include the printing by the Journal on its own volition of "campaign pages" setting forth the personally authored views of each candidate.

We do not anticipate that our order will be violated by the defendants. However, in the event that violations should occur, it is our view that our authority to enforce compliance must rest on our contempt powers, rather than through any attempt to order defendants to alter the content and style of the union publication.

setting forth the views of the candidates when published with union funds would be permissible under this subsection, was not considered possibly because the publication of views of both candidates by a union news organ was not within the ambit of abuse which promoted the enactment of LMRDA. *See* H.R.Rep. No. 741, 86th Cong., 1st Sess. 6–7 (1959); S.Rep. No. 187, 86th Cong., 1st Sess. 5–7 (1959), U.S.Code Cong. and Admin. News 1959, p. 2318, 2428–29, 2322–24.