**James M. MORRISSEY and Ralph Ibrahim, Individually and on behalf of the members of the National Maritime Union of America, Plaintiffs,**

**v.**

**Joseph CURRAN, as President of the National Maritime Union of America and Individually, et al., Defendants.**

No. 73 Civ. 204.

United States District Court,
S. D. New York.

March 19, 1973.

Duer & Taylor, New York City, for plaintiff; Arthur E. McInerney, New York City, of counsel.

Abraham E. Freedman, New York City, for defendants Curran and Wall; Charles Sovel and Stanley B. Gruber, New York City, of counsel.

## MEMORANDUM DECISION

ROBERT L. CARTER, District Judge.

Plaintiffs seek, by order to show cause, certain relief in connection with the forthcoming election of officers of the National Maritime Union (NMU). They ask that defendants Curran and Wall, officers of the NMU, be directed to:

(a) publish the *Pilot* monthly in the period preceding the forthcoming election in the same format as it was published in the six month period preceding the last election and to devote one-half of the *Pilot* each month to plaintiff Morrissey's candidacy;

(b) conduct the balloting by mail and under the supervision of the American Arbitration Association and limit the electorate to include only seagoing members of the union;

(c) have votes broken down on a port by port basis and published on the same basis; and

(d) publish a complete and factual account of a lawsuit entitled Morrissey, et al. v. Curran, et al., 69 Civ. 442 in the next issue of the *Pilot*, such account to be edited by plaintiffs.

## Jurisdiction

Jurisdiction of this court is invoked pursuant to 29 U.S.C. § 481 which provides that a labor organization and its officers shall be under duty, enforceable at the suit of bona fide candidates for office, to comply with reasonable requests to distribute campaign literature by mail or otherwise at the candidate's expense and to refrain from discriminating against any candidate with respect of use of its membership list.[1]

■ The right to nondiscriminatory treatment in the use of membership lists and in the distribution of campaign literature encompasses the right to nondiscriminatory coverage in a union newspaper. Yablonski v. United Mine Workers of America, 305 F.Supp. 868 (D.D.C. 1969).

29 U.S.C. § 483 provides that "[e]xisting rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof" remain in force and effect. 29 U.S.C. § 482 provides for a challenge to an election already held by filing of a complaint with the Secretary of Labor.

■ It is clear therefore, and has been so held, that 29 U.S.C. § 481 et seq. does not affect existing rights and remedies in respect of any forthcoming election. On the other hand "the remedy provided by [§ 482] shall be exclusive" in respect of an election already held. Trbovich v. United Mine Workers of America, 404 U.S. 528 at 531, 92 S.Ct. 630 at 633, 30 L.Ed.2d 686 (1972).

In Libulti v. Di Brizzi, 343 F.2d 460 at 461 (2 Cir., 1965), a case involving a federal claim under § 101 of the Labor-Management Reporting and Disclosure Act (29 U.S.C. § 411), the Second Circuit held that

"Under New York law a union member may enforce in the courts the rights granted to him by the union constitution and bylaws * * *

 *　　*　　*　　*　　*　　*

Jurisdiction over [such a] state-law claim exists under the principle of pendent jurisdiction." (at 461)

■ Counsel for defendants assert that this suit is improper because the union itself is not named as a defendant. To the extent that plaintiffs seek relief under § 481(c), the failure to join the union is no bar, for that section provides that the union *and its officers* shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States in which such labor organization maintains its principal office. . . ." (emphasis added).

■ Defendants have also noted that at the time the order to show cause was returned, Mr. Morrissey had not submitted his nominating petition and was therefore, in their view, not a "bona fide candidate." Morrissey has since qualified to appear on the ballot. Furthermore, it seems reasonable to define

1. 29 U.S.C. § 481 provides that

"Every national or international labor organization, except a federation of national or international labor organizations, and every local labor organization, and its officers, shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States in which such labor organization maintains its principal office, to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members, and whenever such labor organizations or its officers authorize the distribution by mail or otherwise to members of campaigning literature on behalf of any candidate or of the labor organization itself with reference to such election, similar distribution at the request of any other bona fide candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution."

"bona fide candidate" to include those who actively seek nomination, particularly where, as here, the period between nomination and election is short.

██ It therefore seems clear that jurisdiction exists to grant the relief requested in (a) and (b) above and that pendent jurisdiction exists to grant relief in (b) and (c) above to the extent that such relief is warranted by the terms of the union constitution and bylaws.

### Relief Requested as to the Pilot

In an attempt to establish that the *Pilot* is being used as campaign literature for the incumbent slate, plaintiffs have cited July, 1968; May, 1969 and April, 1972 issues (Morrissey Affidavit, dated November 22, 1972) and September, 1969; May, 1968 and November, 1967 issues (Morrissey Affidavit, dated January 25, 1973).

Plaintiffs have brought to this court's attention a "Statement of Policy by NMU National Office Re Union Publications During Election Period" which states that

"Subject to approval of the National Council, there will be no regular issue of the PILOT for the months of March, April and May, 1973, the period between the close of nominations and close of voting."

Counsel for defendants state in their Memorandum of Law in Opposition to Motion for Preliminary Injunction that

" . . . the National Office of the NMU adopted a statement of policy limiting what may appear in the Pilot during the months preceding the voting, and discontinuing publication of the Pilot altogether during the voting period." (p. 21)

██ The NMU Constitution provides that voting shall take place between April 1 and May 31 (Article 12, Sec. 5). There is no evidence before the court of recent discriminatory treatment in the pages of the *Pilot*, or, for that matter, of recent publication of the *Pilot*. Defendants have also called the court's attention to Article 10, Sec. 2(7) of the NMU constitution which requires that a *Pilot* supplement be printed and distributed which shall contain statements from each candidate of up to 100 words along with his or her photograph and assigned number on the ballot.

Given these facts, the relief sought in paragraphs (a) and (d) is denied on the ground that no recent discrimination has been shown which will have an irreparable effect on the election process. Plaintiffs, however, will be given leave to submit a further application in the event that they are able to show 1) discriminatory publication of the *Pilot* during the election period, or 2) denial of equal use of the union membership lists or of reasonable requests for the distribution of campaign literature at the candidates' expense, or 3) unequal treatment in the distribution of campaign literature or in the financing thereof.

### Other Requested Relief

██ 1. The current NMU constitution provides that all marked ballots shall be mailed by the voter, but provides that ballots shall be mailed *to* voters only in certain situations. There is no authorization for a balloting conducted entirely by mail.

The constitution further provides that

"All NMU elections shall be supervised and conducted by the Honest Ballot Association . . ., (unless a similar independent organization is otherwise designated by the National Council) . . .." (Article 12, Sec. I).

Plaintiffs have alleged, but not established at this stage of the proceeding, that the Honest Ballot Association is not "independent" within the meaning of this section. There is an insufficient basis on the present record to warrant the court requiring a substitution of organizations to supervise the election.

██ 2. Article 15, Sec. 1 of the constitution states that

"(b) In determining reasonable rules and regulations for membership eligi-

bility the National Office shall consider such sea-time aboard NMU contract vessels as will qualify the applicant for permanent and continuous employment on such vessels."

In interpreting the constitution as it read in 1965, Judge Motley said in dictum that the above-quoted clause guaranteed

"that one who becomes a member of NMU . . . is a person who earns his livelihood in the maritime industry or has a substantial attachment to that industry." Wirtz v. NMU, 284 F.Supp. 47, at 62 (S.D.N. Y.1968).

Article 5, Sec. 6 of the present constitution provides that the union shall have several divisions of non-seagoing employees and that

"[m]embers of all divisions shall have equal rights and privileges . . . to vote in elections or referendums of the Union . . . ."

Moreover, the preamble to the union constitution, which once read

"WHEREAS, organization is the only means by which the maritime workers may hope to advance their interests and attain final emancipation from the many evils attending their calling
*  *  *  *  *  *
"we . . . declare that in order to protect the interests of the majority of the membership who are aboard ships and in Ports throughout the world, we have adopted this Constitution."

has been amended to read

"WHEREAS, organization is the only means by which workers may hope to advance their interests and attain final emancipation from the many evils attending their calling
*  *  *  *  *  *
"we . . . declare that in order to protect the interests of the majority of the membership throughout the world, we have adopted this Constitution."

This amendment was passed in accordance with Article 5, Sec. 1 and Article 26, Sec. 2.

Viewing the present constitution as a whole, there can be no basis for denying the vote to non-seagoing members.

■ 3. With regard to the publication of election results, it is simply provided that

"The certification of the election results shall be published in the PILOT." (Article 12, Sec. 12).

There is no basis for requiring a port by port breakdown.

The application for relief pursuant to the terms of the union constitution is therefore denied.

So ordered.