NEW WATCH–DOG COMMITTEE, Thomas M. Iandoli, on behalf of themselves Individually and on behalf of all others similarly situated, Plaintiffs,

v.

NEW YORK CITY TAXI DRIVERS UNION, LOCAL 3036, AFL–CIO, Ben Goldberg, its President, and Robert J. Pancaldo, its Secretary, Defendants.

No. 77 Civ. 4137.

United States District Court, S. D. New York.

Oct. 18, 1977.

Kenneth J. Finger, P. C., White Plains, N. Y., for plaintiffs.

Donald F. Menagh, New York City, for defendants; Irwin Geller, New York City, of counsel.

GAGLIARDI, District Judge.

This is an application for a preliminary injunction to restrain the defendants, the New York City Taxi Drivers Union, Local 3036, AFL–CIO ("the Union", or "Local 3036"), and its current president, Ben Goldberg, and secretary, Robert Pancaldo, from engaging in allegedly unlawful practices with respect to a pending election of Union officers and trustees. Plaintiffs are Thomas M. Iandoli, a member of the Union who is a candidate for the office of Union president, and the New Watch-Dog Committee, comprised of Union members who will propose their own slate of candidates, headed by Iandoli. Plaintiffs, suing on behalf of themselves and all others similarly situated, claim that defendants have violated various provisions of Title 1, §§ 101 *et seq.*, of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 411 *et seq.*, and of Title IV, §§ 401–403, of LMRDA, 29 U.S.C. §§ 481–483, as well as various provisions of the Union's constitu-

tion and by-laws. Jurisdiction is alleged under LMRDA § 102, 29 U.S.C. § 412, LMRDA § 401(c), 29 U.S.C. § 481(c), and principles of pendent jurisdiction.

The Union election, held once every three years, is currently scheduled to take place during the final week of October, 1977. Plaintiffs allege in their complaint that defendants' conduct threatens the fairness of the scheduled election in several different respects. The specific contentions raised by plaintiffs, together with the relief sought, are as follows:

1. Plaintiffs allege that defendants have discriminatorily used the Union pensioners membership list by allowing its use to support the candidacies and reelection campaigns of incumbent officers while denying plaintiffs access to it, in violation of LMRDA §§ 401(c) and 401(g), 29 U.S.C. §§ 481(c) and 481(g). Plaintiffs also charge that defendants improperly used Union funds to support the candidacies of incumbent officers by organizing and financing two brunch meetings for 400 Union pensioners which allegedly were occasions for electioneering by incumbents in violation of 29 U.S.C. § 481(g). An injunction requiring defendants to allow plaintiffs to inspect the membership list in support of their own candidates and prohibiting future misuse of Union funds was requested by plaintiffs.[1]

2. Plaintiffs allege that defendants have reduced the number of days during which candidates may be nominated from eight to five, thus improperly limiting the nomination process of the Union election committee in violation of Union by-laws. Plaintiffs ask the court to order an extension of the period for nominating election committee candidates.

3. Plaintiffs allege that defendants intend to allow members of the Taxi Owner Drivers Division (the "TODD") of the defendant Union to vote in the upcoming election, which, plaintiffs claim, violates the

---

1. Subsequent to the commencement of this action the parties, acting under the supervision of the court, have reached a settlement with respect to plaintiffs' claims that defendants have

discriminatorily used Union funds and its membership list to promote the candidacies of incumbent officials. *See* footnotes 3 and 6, *infra.*

Union's constitution and by-laws and will result in the unlawful dilution of the votes of those Union members not members of the TODD. Plaintiffs ask the court to enjoin the owner drivers from voting in the election.

4. Plaintiffs allege that defendants have improperly used the Union newspaper to advocate the candidacies of incumbent officers. Plaintiffs ask the court to enjoin further such use of the Union publication and to correct the past misuse by ordering the defendants in the future to provide equal space and coverage in the Union paper for plaintiffs and the candidates they support.

## Jurisdiction

■ LMRDA § 401(c), 29 U.S.C. § 481(c), expressly provides pre-election jurisdiction in this court to remedy discrimination in access to union membership lists and distribution of campaign literature.[2] Plaintiffs have charged that defendants discriminatorily used the Union pensioners membership list by denying plaintiffs access to it while employing it themselves to convoke brunch meetings at which electioneering on behalf of incumbent officers allegedly took place. This allegation plainly charges a violation of LMRDA § 401(c), 29 U.S.C. § 481(c). It is undisputed, moreover, that the statute's remaining jurisdictional prerequisites are met: the instant claim is brought by a bona fide candidate for Union office in the United States District Court for the district in which the defendant Union maintains its principal office. Accordingly, this court does have jurisdiction over plaintiffs' claim of discriminatory use of Union membership lists and its request for access thereto for the mailing of campaign literature. 29 U.S.C. § 481(c); *Calhoon v. Harvey,* 379 U.S. 134, 140 n.13, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964); *Backo v. Local 281, United Bro. of Carpenters & Joiners,* 308 F.Supp. 172, 176 (S.D.N.Y.1969), *aff'd,* 438 F.2d 176 (2d Cir. 1970), *cert. denied,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971); *Yablonski v. United Mine Workers of America,* 305 F.Supp. 868, 875 (D.D.C.), *supplemented on remand,* 305 F.Supp. 876 (D.D.C.1969). Based on a court-supervised agreement between the parties, however, plaintiffs have withdrawn their request for court-ordered relief as to this claim.[3]

■ Further, it is established that such right to nondiscriminatory access to membership lists, enforceable in a pre-election injunctive suit, includes the right to nondiscriminatory coverage in and utilization of union publications. *Morrissey v. Curran,* 356 F.Supp. 312, 314 (S.D.N.Y.1973); *Shel-*

2. LMRDA § 401(c), 29 U.S.C. § 481(c), provides in pertinent part:

(c) Every national or international labor organization, except a federation of national or international labor organizations, and every local labor organization, and its officers, shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States in which such labor organization maintains its principal office, to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization and to refrain from discrimination in favor of or against any candidate with respect to the use of lists of members, and whenever such labor organizations or its officers authorize the distribution by mail or otherwise to members of campaign literature on behalf of any candidate or of the labor organization itself with reference to such election, similar distribu-

tion at the request of any other bona fide candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution. Every bona fide candidate shall have the right, once within 30 days prior to an election of a labor organization in which he is a candidate, to inspect a list containing the names and last known addresses of all members of the labor organization who are subject to a collective bargaining agreement requiring membership therein as a condition of employment, which list shall be maintained and kept at the principal office of such labor organization by a designated official thereof.

3. Plaintiffs no longer seek relief from the court as to this claim, for the Union has represented to the court and to plaintiffs in a signed consent agreement submitted to the court that it "will make available its general membership and pensioner's list for: a) Inspection by the plaintiffs; b) Mailing of the literature of the plaintiffs by an outside firm . . . ."

*don v. O'Callaghan,* 335 F.Supp. 325, 327–28 (S.D.N.Y.1971); *Yablonski v. United Mine Workers, supra,* 305 F.Supp. at 875. *See also Sheldon v. O'Callaghan,* 497 F.2d 1276, 1283 n.9 (2d Cir.), *cert. denied,* 419 U.S. 1090, 95 S.Ct. 681, 42 L.Ed.2d 682 (1974) (the "equal rights and privileges" guarantee of LMRDA §§ 101 and 102, 29 U.S.C. §§ 411(a) and 412, held applicable as jurisdictional base when the defendant union allegedly undermined the fairness of a pending referendum by denying plaintiffs access to membership lists and by presenting biased coverage in union newspaper). Consequently, this court has proper jurisdiction to determine plaintiffs' pre-election suit alleging discriminatory misuse of the Union paper.

■ Plaintiffs' claim that defendants unlawfully contributed or applied Union funds to promote the candidacy of incumbent officers by financing the brunch meetings at which campaigning took place alleges a violation of LMRDA § 401(g), 29 U.S.C. § 481(g).[4] This claim is exclusively to be raised after the election by the Secretary of Labor pursuant to LMRDA § 402, 29 U.S.C. § 482,[5] and this court has no jurisdiction over it at this point, for "Congress, with

[the exception of the rights and pre-election enforcement provisions of LMRDA § 401(c), 29 U.S.C. § 481(c), discussed *supra* ], decided not to permit individuals to block or delay union elections by filing federal-courts suits for violations of Title IV." *Calhoon v. Harvey, supra,* 379 U.S. at 140, 85 S.Ct. at 296. In any event, the parties have reached a mutually acceptable settlement of this claim and its merits are no longer before the court.[6]

■ The claims that defendants improperly shortened the nomination period for members of the Election Committee and that members of the Taxi Owner Drivers Division ("TODD") of the defendant Union should not be permitted to vote in the pending election allege violations of the Union's constitution and by-laws. As such they present causes of action for breach of contract under state law, *see, e. g., Polin v. Kaplan,* 257 N.Y. 277, 177 N.E. 833 (1931), and consequently may be considered by this court under the principle of pendent jurisdiction if they and the federal claims established under LMRDA § 401(c), 29 U.S.C. § 481(c), discussed *supra,* "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86

---

4. LMRDA § 401(g), 29 U.S.C. § 481(g), provides:

> (g) No moneys received by any labor organization by way of dues, assessment, or similar levy, and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to the provisions of this subchapter. Such moneys of a labor organization may be utilized for notices, factual statements of issues not involving candidates, and other expenses necessary for the holding of an election.

5. LMRDA § 402, 29 U.S.C. § 482, provides in pertinent part:

> (a) A member of a labor organization—
> (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
> (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization

pertaining to the election and removal of officers). . . .

> (b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe.

6. The Union has represented to the Court and to plaintiffs in a signed consent agreement submitted to the court that while it "does not concede it has violated the law . . . [it] agrees it will not use union funds to promote the candidacy of union officers in the upcoming election." Accordingly, plaintiffs no longer press this claim.

S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). As held in *Libutti v. DiBrizzi,* 343 F.2d 460, 461 (2d Cir. 1965), in which federal jurisdiction had been based on LMRDA § 101(a), 29 U.S.C. § 411(a):

> "Under New York law, a union member may enforce in the courts the rights granted to him by the union constitution and by-laws . . . . [citations omitted] . . . Jurisdiction over [the] state-law claim exists under the principle of pendent jurisdiction."

*Accord, Morrissey v. Curran, supra,* 356 F.Supp. at 314; *see Schonfeld v. Raftery,* 271 F.Supp. 128, 149 (S.D.N.Y.), *aff'd,* 381 F.2d 446 (2d Cir. 1967).

█ It is not entirely clear that here such "a common nucleus of operative fact" exists, for the federal claims based on the LMRDA relate to defendants' allegedly discriminatory misuse of the Union membership lists and newspaper, while plaintiffs' other claims require a construction of the Union constitution and by-laws with respect to the Election Committee nomination period and membership provisions. Nevertheless, this court concludes that under the particular circumstances of this case, in which plaintiffs seek injunctive relief against a variety of allegedly improper practices designed to interfere with the fairness of the pending Union election, a sufficiently common nucleus exists as to justify the conclusion that "considered without regard to their federal or state character, [plaintiffs'] claims are such that [they] would ordinarily be expected to try them in one judicial proceeding." *United Mine Workers v. Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. at 1138. Given the substantiality of the federal claims, this court has the power to hear all the claims, *id.,* at 725, 86 S.Ct. 1130, and in the exercise of its discretion determines to do so.[7] *Libutti v. DiBrizzi, supra; Morrissey v. Curran, supra; Allen v. International Alliance of Theatrical, Stage Employees, etc.,* 338 F.2d 309, 314 (5th Cir. 1964); *Rota v. Brotherhood of Railway, Airline & S.S. Clerks,* 64 F.R.D. 699, 704–705 (N.D.Ill.1974); *cf. Sipe v. Local Union No. 191, etc.,* 393 F.Supp. 865 (M.D.Pa.1975) (court declined to exercise discretion to assume pendent jurisdiction).

### Merits

The primary issue which remains to be considered on its merits by this court is plaintiffs' allegation of discriminatory use of the Union newspaper, for the claims based on the Union constitution and by-laws are plainly without merit.[8]

---

7. This court is not divested of otherwise proper jurisdiction by the exclusivity provisions of Title IV of the LMRDA, §§ 401–403, 29 U.S.C. §§ 481–483, which are addressed to elections already conducted, *see Trbovich v. United Mine Workers of America,* 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). LMRDA § 403, 29 U.S.C. § 483, expressly provides that "[e]xisting rights and remedies to enforce the constitution and bylaws of a labor organization *prior to the conduct thereof* shall not be affected by the provisions of [Title IV]" (emphasis added). *See Trbovich v. United Mine Workers of America, supra,* 404 U.S. at 531, 92 S.Ct. 630; *Morrissey v. Curran, supra,* 356 F.Supp. at 314.

   Plaintiffs also suggest that the Union's decision to allow TODD members to vote in the pending election will so dilute plaintiffs' own vote that it will effectively disenfranchise them, in violation of their equal voting rights under LMRDA § 101(a)(1), 29 U.S.C. § 411(a)(1). Such a violation, of course, would permit plaintiffs to maintain their present suit in this court prior to the election under LMRDA § 102, 29 U.S.C. § 412. *Calhoon v. Harvey, supra,* 379 U.S. at 141, 85 S.Ct. 292 (Stewart, J., concurring). However, it appears well-settled that no such violation of LMRDA Title I is made out where plaintiffs "have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others." *Calhoon v. Harvey, supra,* 379 U.S. at 139, 85 S.Ct. at 295; *Fritsch v. District Council No. 9, Bro. of Painters, etc.,* 493 F.2d 1061, 1063 and n.5 (2d Cir. 1974); *Navarro v. Gannon,* 385 F.2d 512 (2d Cir. 1967); *cf. Robins v. Rarback,* 325 F.2d 929, 932–33 and n.1 (2d Cir. 1963) (concurring opinion). This question need not be decided here in light of the court's determination to consider as a matter of pendent jurisdiction plaintiffs' allegation that TODD members cannot properly vote in the upcoming election.

8. Solely for the purposes of the instant motion for a preliminary injunction, the parties have waived an evidentiary hearing and have agreed to have the issues decided on the basis of the pleadings and their submissions to the court, including affidavits and documentary exhibits.

■ The charge that defendants unlawfully reduced the nomination period for candidates for the election committee borders on the frivolous. The parties agree that the pertinent provisions of the Union constitution establish that this nomination period is to commence on the first Thursday of September and close the following Wednesday. Plaintiffs assert that defendants violated the provision by keeping the Union office open and available for such nominations only during its regular business hours, eight hours a day with the exception of Saturday, Sunday and Labor Day, on which days the office was closed. Plaintiffs' contention that office hours during the nomination period should have been maintained twenty-four hours a day for *each* day of the period is presented conclusorily and refers to no authority, either in case law or prior practice, by way of support. This court accepts the Union's construction of the provision as referring to regular business hours and declines to order a reopening or extension of the nomination period.

Similarly without merit is the allegation that the members of the TODD are not members of the Union and therefore must not be permitted to vote in the pending election. As plaintiffs concede (Complaint, ¶ 15), the Union's constitution provides that:

> [t]here shall be established *within the structure of* New York City Taxi Drivers Union, Local 3036, AFL–CIO, a Division to be known as "Taxi Owner Driver Division." This Division shall have its own By-Laws pertaining to the specific needs of the membership of this Division and such By-Laws shall conform in all respects with the Constitution and By-Laws of Local 3036, AFL–CIO. [emphasis added].

Further, the TODD by-laws, which were presented for ratification at a membership meeting of Owner Driver "members in good standing of Local 3036, AFL–CIO," expressly acknowledge that the TODD was established "within the framework of Local Union 3036", (Plaintiffs' "Factual Submission" of 9/15/77, Ex. C, p. 1). The TODD by-laws further provide that

> [n]o action may be taken [by the TODD] in conflict with the basic constitutional requirements of the Constitution and By-Laws of the local union . . . and all actions [of the TODD] shall adhere to and comply with the rules, regulations and provisions of the Constitution and By-Laws of [Local] 3036, Taxi Drivers Union, AFL–CIO (*id.,* p. 2).

Membership in the TODD is established "in accordance with the Constitution and By-Laws of the local union," (*id.,* p. 5) as are salaries for TODD officers (*id.,* p. 7). The TODD chairman reports monthly on the state of the division to the executive officers of the Union (*id.,* p. 9), and the TODD secretary receives dues from the members of the TODD and turns them over to the Union treasurer (*id.,* p. 11).

The foregoing facts make clear that the TODD has been established as a subordinate but integral element of the defendant New York City Taxi Drivers Union, Local 3036, AFL–CIO, and that it exists entirely within and as part of the structure of Local 3036. As pointed out above, the Union's constitution and by-laws are the authorities which govern TODD activities, membership, and officer salaries. That the TODD has its own officers and conducts its own meetings, or that certain clerical details such as dues records or division membership lists are maintained separately for the TODD, does not set the TODD apart from or outside of the Union. It indicates only that the TODD is a distinct entity within Local 3036, and that for certain purposes the concerns of members of Local 3036 who are owner drivers may reasonably be distinguished from the concerns of other members of Local 3036 who do not own the taxicabs they drive. Such an arrangement simply permits the TODD to be attentive to the particular needs of owner drivers in the overall context of a union of taxi drivers. As the TODD by-laws set forth, it is "the responsibility of the Owner Drivers Division to effectuate and promote the welfare of the members of the Owner Drivers Division in relation to their [sic] welfare of the local

union *as a whole*" (Plaintiffs' "Factual Submission" of 9/15/77, Ex. C, p. 7) [emphasis added].

It appears that plaintiffs' real argument is not that members of the TODD are in fact not members of Local 3036, but that because their interests are different from other Union members they *should* not be. It is contended that "[t]here is no community of interest between the members of Local 3036 and the owner drivers in the owner drivers division which can justify the owner drivers voting in the election of . . Local 3036" (Complaint, ¶ 17). For authority plaintiffs rely primarily on the fact that TODD members did not vote on and are not covered by the collective bargaining agreement that Local 3036 has negotiated with member companies of the Metropolitan Taxicab Board of Trade, Inc. (Plaintiffs' "Factual Submission" of 9/15/77, Ex. A).

However, it is absolutely clear that owner drivers are not excluded from the Union simply because a particular collective bargaining agreement covering other members does not apply to them as well. In this regard prior litigation involving Local 3036 in the United States District Court for the Southern District of New York is directly on point. In November of 1973 the Union consented to the issuance of an injunction which provided in pertinent part:

3. The following pertains to the holding of a special meeting to ratify any proposed terms of a collective bargaining agreement . . . :

(a) The Union shall not enter any collective bargaining agreement on any issues unless such collective bargaining agreement has been ratified *by the members covered by the agreement* at a special meeting called for that purpose . . . . . .

(e) The Union shall only admit to such ratification meeting *members in good standing who will be covered by the proposed collective bargaining agreement . . .* (*Plaintiffs' Factual Submission of 9/15/77, Ex. D*) [emphasis added].

The injunction, as ultimately issued by the court on November 26, 1973 ordered that Local 3036 was to conduct a meeting at which ratification of a proposed agreement with the Metropolitan Taxicab Board of Trade would be discussed and voted on, and that "[o]nly members in good standing *who will be covered by the proposed contract* are to be admitted to the meeting" [emphasis added]. *Taxi Rank and File Coalition v. Van Arsdale,* 86 L.R.R.M. 2359, 2362 (S.D.N.Y.1973) (Frankel, J.).

The injunction in general, and the language quoted above in particular, specifically contemplated that collective bargaining agreements covering some and not all members of Local 3036 would be negotiated. It ordered that only members actually covered by any proposed agreement were to be allowed to vote on its ratification. Left unstated was the obvious—that Union members not covered and thus not entitled to vote remained members of the Union nonetheless.

This obvious truth, left implicit in the terms of the injunction, was made explicit when the Union was subsequently charged with violating the provisions of the order. *Taxi Rank and File Coalition v. Van Arsdale,* 86 L.R.R.M. 2362 (S.D.N.Y.1974). Specifically, the Union was shown to have scheduled TODD members to attend a meeting for ratification of a contract not involving the TODD. After hearing the parties Judge Frankel held that "in direct conflict with the order of this court, the defendants have planned that the meeting of *all* the members—most notably including owner-drivers 'who will [not] be covered by the proposed contract'—are to be at the meeting." *Id.,* at 2363 [emphasis in original].

Thus, the TODD members were distinctly and unqualifiedly recognized by Judge Frankel to be members of Local 3036, though they were not permitted to participate in the consideration of a contract whose terms did not cover them. In light of the TODD and Local 3036 documents submitted to the court in the instant action and the total absence of persuasive

authority to the contrary, this court similarly concludes that TODD members are members of the defendant Union, and as such are entitled by its constitution to vote in the upcoming election for Union officers and trustees.

■ Finally, the court must also deny plaintiffs' request that the Union be required to provide equal space in the Union newspaper for coverage of non-incumbent candidates. Plaintiffs have failed to establish that the newspaper has been improperly used to campaign for or promote the candidacies of the defendant officers so as to warrant the granting of such injunctive relief.

In support of their claim that the Union newspaper, the "Taxi Drivers Voice", has been used to promote the election campaigns of defendant Goldberg, currently president of the Union, and defendant Pancaldo, currently its secretary, plaintiffs have submitted six issues of the newspaper (Complaint, Exs. B–G) and allege that defendants have repeatedly inserted articles and photographs of the defendants while refusing to present coverage of any candidates opposing the incumbent officials. Defendants have submitted additional, more recent issues of the paper (Attachment to Goldberg Affidavit in Opposition to Request for Preliminary Injunction) and deny any such misuse. An examination of the issues of the "Taxi Drivers Voice" presently before it persuades this court that the press exposure received by the incumbent officers is substantially attributable to their participation in newsworthy events of interest to the Union, and that the Union paper has not been used as a campaign organ in violation of LMRDA § 401(c), 29 U.S.C. § 481(c).

Plaintiffs have pointed to no instances of overt or express electioneering material in the newspaper issues submitted to the court, which range sporadically from the January 17, 1977 issue to the August 29, 1977 issue. Rather, plaintiffs rely on the theory that simply because the Union officials have been featured in the newspaper and plaintiffs' candidates have not, the cumulative effect of such treatment in the months preceding the Union election must inevitably be to influence members to recognize, approve of, and ultimately vote for the incumbent officials, thus constituting misuse of the Union paper. This theory, though not implausible, must fail on the facts of this case.

The defendant officials have been featured or included in a variety of articles, most notably covering such matters as meetings with Mayor Beame concerning "mini-fleet" taxicab sales and with New York State Industrial Labor Commissioner Philip Ross (Complaint, Ex. D, Jan. 17 issue); the Local 3036-supported denial by the New York State Department of Transportation of the application of Long Island Taxi & Transportation Operator's Association for rights to taxi stands at J.F.K. International Airport (*id.*, Ex. F, May 16 issue); the twenty-fifth annual Community Services Institute (*id.*), the murders of two Local 3036 members and the Union response to local governmental and police officials (*id.*, Ex. B, June 29 issue; *id.*, Ex. C, undated special edition, and *id.*, Ex. E., July 29 issue), as well as the related establishment of a Police Department Taxi Task Force (*id.*, Ex. G, July 18 issue); a meeting with a representative of the New York State Attorney General concerning possible fraud in certain Mini-Fleet agreements (*id.*, Ex. E, July 29 issue), and the filing of a suit by Local 3036 against the New York Taxi and Limousine Commission to obtain injunctive relief against public fleet owners (Attachment to Goldberg Affidavit, *supra*, undated special edition). The defendant officials also appear occasionally in smaller "color" items, such as articles or photo displays concerning local workshops and seminars, Union scholarship awards, visits to neighborhood garages, and Union supported recreational clubs. Defendants Goldberg and Pancaldo, in their official capacities, also co-author a regular editorial column entitled "The Message," through which they express the views of the Union executives on economic and political issues of interest to Local 3036.

As noted previously, plaintiffs consider none of the foregoing activity to be overt campaigning. Instead, they claim that in sum it constitutes discriminatory use of the Union paper because it highlights the incumbents' activities while ignoring other candidates entirely. It is clear that the newspaper coverage of the defendant officers is addressed to their regular activities and duties as officers and not as candidates for re-election. Although this court recognizes that to an extent incumbent officers in a pre-election period must be potentially regarded as de facto though unannounced candidates for re-election, it cannot conclude that as a consequence all reporting concerning an incumbent official is to be treated as impermissible campaigning for the incumbent-candidate. The reporting reviewed by the court is certainly not a paragon of objective journalism, for it is uncritical of the defendant officers and plainly implies that they are diligently discharging their Union responsibilities. However, this without more cannot be construed as discriminatory electioneering or promotional literature so as to constitute a violation of LMRDA § 401(c), 29 U.S.C. § 481(c), and require the issuance of an injunction. As has been observed in this same situation,

> This is a judgment decision which is made with full appreciation of the character of the [Union newspaper] and similar publications of other national unions. We are aware that defendant [Goldberg], as the President of the union running for reelection, will in the nature of things be an important participant in many matters of interest to the membership and be more likely to have his participation in these matters the subject of inclusion in any report to the membership through the [Union newspaper]. A line must be drawn between the use of the [Union newspaper] to report the activities of defendant [Goldberg] as President, which is permissible, and the use of the [Union newspaper], in such a way in reporting such activities, as to promote the candidacy of said defendant.

*Yablonski v. United Mine Workers of America, supra,* 305 F.Supp. at 871.

There is no allegation that any bona fide and newsworthy Union activities of plaintiffs were deliberately excluded from the paper so as to deny them equal coverage. In fact, defendant Goldberg's uncontradicted assertion is that plaintiff Iandoli currently holds no Union position, that his work in the New York City taxi industry has been slight since 1974, and that his candidacy in the pending election was not announced until the commencement of the instant lawsuit (Goldberg Affidavit in Opposition, *supra,* ¶ 18). There is absent from this case such use by the incumbent president of the union paper to publicize severe criticism of opposing candidates and lavish campaign promises on his own behalf as was held unlawful in *Hodgson v. Liquor Salesmen's Union, Local No. 2,* 334 F.Supp. 1369, 1371–73 (S.D.N.Y.), *aff'd,* 444 F.2d 1344 (2d Cir. 1971). Nor is there here "electioneering for the incumbent candidate [and] *ad hominem* attacks upon an opposition candidate" such as were found to be present in one publication in *Sheldon v. O'Callaghan, supra,* 335 F.Supp. at 327 and n.2. Rather, as the *Sheldon* court held with respect to a second allegedly misused publication, the Union paper here

> displays [Goldberg] and other incumbent candidates in their respective representative capacities as active participants in matters of interest to the membership. It does not discuss members who are not active participants who are candidates for office. It is not unusual for the publication to publish pictures of incumbent officers in the performance of their related activities. This is not "excessive coverage . . . given to defendant . . ."

*Id.,* at 328 (citation omitted). *Accord, Yablonski v. United Mine Workers of America,* 307 F.Supp. 1226 (D.D.C.1969); *cf. Hodgson v. Liquor Salesmen's Union, Local No. 2, supra; Hodgson v. United Mine Workers of America,* 344 F.Supp. 17, 22–23 (D.D.C.1972) (Union paper printed activities, speeches and convention song of incumbent; refused to announce opponent's candidacy or report on his union activities); *Brennan v. Sindica-*

to *Empleados de Equipo Pesado etc.*, 370 F.Supp. 872 (D.P.R.1974) (advertisements placed in public newspapers at union expense attacked incumbent's opponent).

■ The single edition of the Union newspaper which raises a substantial question of impropriety is the special edition published in August after the pre-election period commenced which announced, with banner headline and photographs, the institution of a lawsuit by Local 3036 led by president Goldberg against the New York Taxi and Limousine Commission (Attachment to Goldberg Affidavit, *supra*, undated special edition). The proximity to the election date of union press coverage of incumbent officials may be considered in determining whether there has been impermissible campaign usage of the union paper. *See, e. g., Hodgson v. United Mine Workers of America, supra,* 344 F.Supp. 17; *Hodgson v. Liquor Salesmen's Union, Local No. 2, supra,* 334 F.Supp. 1369. However, it is clear that since August defendants have reduced the entire coverage addressed to any and all incumbents, regardless of the nature of their activities as officials. Consequently this court concludes that the existence of the single questionable issue of the Union paper, in light of the evidence previously reviewed, establishes neither the existence of substantial violation in the past nor the likelihood of repetition of any violation in the future.

■ The familiar standard governing the issuance of a preliminary injunction provides that such an injunction should be granted upon a showing of either

(1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973) (emphasis in original). *Accord, Jacobson & Co., Inc. v. Armstrong Cork Co.,* 548 F.2d 438, 440–442 (2d Cir. 1977); *Triebwasser & Katz v. American Tel. & Tel. Co.,* 535 F.2d 1356 (2d Cir. 1976); *Checker Motors Corp. v. Chrysler Corp.,* 405 F.2d 319 (2d Cir.), *cert. denied,* 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969). Here there has been no showing by plaintiffs of probable success on the merits of their claims, and this court's consideration of plaintiffs' various contentions has convinced it that for purposes of the *Sonesta* test, any questions going to the merits are not sufficiently serious to make them even "fair ground for litigation." Furthermore, plaintiffs have failed to sustain the burden of making a clear showing of the threat of irreparable injury, which is required under either branch of the *Sonesta* test. *Triebwasser & Katz v. American Tel. & Tel. Co., supra,* 535 F.2d at 1359; *see Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). The LMRDA provides for post-election remedies in §§ 401–403, 29 U.S.C. §§ 481–483, and the availability of these remedies diminishes plaintiffs' present claim of irreparable injury. *Sheldon v. O'Callaghan, supra,* 335 F.Supp. at 328–29; *but cf. Yablonski v. United Mine Workers of America, supra,* 305 F.Supp. at 871–72 (Title IV remedy characterized as "cumbersome, doubtful," *id.,* at 871, and thus not an adequate remedy at law). It is further clear that where, as in the instant case, "plaintiff establishes something less than probable success as to the merits, need for proof of the threat of irreparable damage is even more pronounced." *Triebwasser & Katz v. American Tel. & Tel. Co., supra,* 535 F.2d at 1359.

Accordingly, for the foregoing reasons plaintiffs' motion for a preliminary injunction is denied.

So Ordered.