**NEW DIRECTIONS and Tim Schermerhorn, Plaintiffs,**

**v.**

**Damaso SEDA, as President of Local 100, Transport Workers Union of America, Defendant.**

**Civ. A. No. 94 CIV 7663.**

United States District Court,
S.D. New York.

Nov. 9, 1994.

Arthur Z. Schwartz, Lewis, Greenwald, Kennedy, Lewis, Clifton & Schwartz, P.C., New York City, for plaintiffs.

David B. Rosen, O'Donnel, Schwartz, Glanstein & Rosen, New York City, for defendant.

### *MEMORANDUM OPINION AND ORDER*

BAER, District Judge.

Plaintiffs bring this action under the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 et seq., alleging that defendant Damaso Seda, the incumbent President of Local 100, Transport Workers of America ("Local 100"), violated Sections 401(c) and 481(c) of the LMRDA by distributing, at the expense of the membership, pre-election campaign materials supporting his re-election without providing plaintiffs an equal opportunity to distribute their election materials.

Plaintiffs have moved for a preliminary injunction (1) requiring Local 100 to pay for a similar distribution of their campaign literature; and (2) restraining Local 100 from further violations. Defendant has moved to consolidate plaintiffs' motion for a preliminary injunction and seek a ruling by this Court on the underlying issue of a permanent injunction.

For the foregoing reasons, defendant's motion to consolidate is GRANTED; and plaintiff's motion for a preliminary injunction, now considered as a claim for a permanent injunction, is also GRANTED.

For the purposes of this opinion, the following facts are undisputed and accepted as true. Local 100 is a labor organization that represents approximately 35,000 employees in the New York City transportation system, of which approximately 32,000 are employees of the New York City Transit Authority ("TA"). New Directions is a caucus within Local 100 opposed to the union's current policies, and Tim Schermerhorn is New Direction's presidential candidate in the upcoming triennial union election. Mr. Schermerhorn is a founding member of New Directions and has run unsuccessfully as New Directions' presidential candidate in both 1988 and 1991. Defendant Damaso Seda is Local 100's incumbent President.

In May 1994, while Local 100 was renegotiating its collective bargaining agreement with the TA, Local 100 paid for and distributed a newsletter to its union members. The newsletter contained an article written by President Seda entitled "New Directions at it Again," wherein he made, *inter alia*, the following statement:

> It is obvious to me that New Directions wants—let me put this a little stronger—is praying for me and my fellow officers to fail in the negotiations so that they have an issue to run on later this year. In other words, New Directions wants you—the rank and file member—to get screwed on this contract so that they can say, "see, we told you so, vote for us."

In response to Seda's article, Schermerhorn wrote a letter to Seda, dated July 7, 1994, describing the article as "campaign literature" and objecting to the use of Local 100's funds to finance its circulation. Schermerhorn demanded in the same letter "that Local 100 print, or pay the cost of printing, a campaign piece by New Directions and that it be mailed to the mem-

bers at the Local's expense." *Id.* There was no response to Schermerhorn's letter.

In October 1994, Schermerhorn circulated his nomination petition to head New Direction's election slate as its presidential candidate in the November elections. Voting ballots are scheduled to be distributed on or about November 20, 1994. The election will be held in November and December 1994.

Section 481(c) of the LMRDA provides, in pertinent part, that:

> whenever ... labor organizations or its [sic] officers authorize the distribution by mail or otherwise to members of campaign literature on behalf of any candidate or of the labor organization itself with reference to such election, similar distribution at the request of any other bona fide candidate shall be made by such labor organization and its officers, with equal treatment as to the expense of such distribution.

29 U.S.C. § 481(c) (1985).

Plaintiffs claim that Seda's article violated Section 481(c) because it was impermissible campaign literature. Accordingly, they seek similar distribution of their campaign literature at Local 100's expense. Conversely, defendant argues that neither Tim Schermerhorn nor New Directions was a "bona fide candidate" under Section 481(c), thereby precluding plaintiffs from exercising the statute's remedial measures. Further, defendant claims that Seda's article did not constitute impermissible campaign literature.

Defendant Seda maintains that plaintiff Schermerhorn did not qualify as a "bona fide candidate" under Section 481(c) because he had not yet declared his candidacy for union office in or before May 1994, the date Seda published the disputed article. Seda claims, therefore, that Schermerhorn cannot avail himself of LMRDA's remedial measures. To support his position, Seda cites Schermerhorn's July 7, 1994 letter seeking, on behalf of New Directions, the distribution by Local 100 of New Directions' campaign literature. According to Seda, if Schermerhorn was a candidate for union office at that time, he would have requested, on his own behalf, the distribution by Local 100 of his own campaign literature. Further, Seda argues that New Directions, as the actual party seeking relief in Schermerhorn's letter, similarly does not constitute a "bona fide candidate" under Section 481(c) because it is not an individual.

■ Courts have held that a plaintiff need not be officially nominated at the precise moment the alleged campaigning took place in order to qualify as a "bona fide candidate" under Section 481(c). *See International Organization of Masters, Mates & Pilots v. Brown,* 498 U.S. 466, 474, 111 S.Ct. 880, 886, 112 L.Ed.2d 991 (1991); *Morrissey v. Curran,* 356 F.Supp. 312, 314–15 (S.D.N.Y.1973); *Yablonski v. United Mine Workers of America,* 1969 WL 4770, at *1 (D.D.C.1969). So long as a plaintiff actively seeks nomination and election when the wrongful campaigning occurs, he fits within the definition of a "bona fide candidate." *See Morrissey,* 356 F.Supp. at 314–15; *Yablonski,* 1969 WL 4770, at *1. Parenthetically, it seems that without such an interpretation and its application to these facts, the law could be easily circumvented, if not evaded.

■ This court finds that Schermerhorn was actively seeking nomination to union office in May 1994, when Seda published his article, and thus qualifies as a "bona fide candidate" under Section 481(c). Although Schermerhorn's July 7, 1994 letter did pursue distribution of campaign literature by Local 100 on behalf of New Directions, Schermerhorn is a founder of New Directions and has been its presidential candidate since 1988. Further, he is widely known throughout Local 100 as New Direction's leader. In Local 100 politics, Schermerhorn has always been identified with New Directions. Accordingly, Seda's description in his article of New Directions' activities as "electioneering," and his plea for New Directions to "wait until the election to electioneer," satisfies this Court that Schermerhorn, through his association with New Directions, was actively seeking union office at the time of publication. To hold that Schermerhorn falls outside Section 481(c)'s definition of "bona fide candidate" merely because he requested relief on behalf of New Directions, instead of on his own

behalf, would be unduly harsh and advocates a tortured reading of the statute.

In determining whether there has been impermissible campaign usage of a union publication under Section 401(c), the court must consider its overall timing, tone, content and context. *See Dole v. Federation of Postal Police Officers, Inc.,* 744 F.Supp. 413, 418 (E.D.N.Y.1990) *McLaughlin v. American Federation of Musicians,* 700 F.Supp. 726, 732 (S.D.N.Y.1988). After analyzing the above factors, this Court finds that Seda's article violated Section 481(c).

The time of publication, May 1994, was close enough to the election to conceivably influence its outcome. Although one court has held that material distributed too remote in time from an election is not considered campaign literature, *see Camarata v. International Brotherhood of Teamsters,* 478 F.Supp. 321, 330 (D.D.C.1979), Congress could not have meant that if an incumbent President with a newspaper at his disposal starts his campaign for re-election early, the equal time provision is inapplicable. Seda's article appeared just six months before the November 1994 elections, and only five months before nomination ballots were circulated. *See, e.g., Dole,* 744 F.Supp. at 420–21 (newsletter distributed two months before election constituted campaign literature, while newsletter distributed nine months before nominations submitted did not). Moreover, the article appeared during, and referred to, contract negotiations with the TA, a major political event for Local 100 members and closely connected to the election campaign.

The tone and content of the article are political and smacks of campaigning. In the article, Seda accuses New Directions of "electioneering" by criticizing the union's contract negotiations with the TA and creating "an issue to run on later this year." Seda derisively calls New Directions "political opportunists," and counsels it to "[w]ait until the election to electioneer." *Id.* By repeatedly referring to the upcoming elections, Seda's article is conspicuously political in nature.

Although the union published Seda's article in the context of negotiating a new collective bargaining agreement with the TA, such negotiations and their results are crucial to Local 100 and have always been a major issue in its elections.

### ORDER OF JUDGMENT

Defendant's motion to consolidate is hereby GRANTED, and plaintiffs' claim for an injunction is hereby GRANTED. The clerk is directed to enter judgment accordingly.

Consistent with this opinion, plaintiffs are ORDERED to deliver their campaign material, which shall not exceed the length of defendant's May 1994 article, to Local 100 not later than Wednesday, November 9, 1994, at 9:00 a.m. As defendant's article refers only to New Directions, and does not refer to Schermerhorn, plaintiffs' campaign material shall likewise refrain from referring to Schermerhorn. Further, said campaign material shall be limited in content solely to a response to defendant's May 1994 article. Local 100 is ORDERED to distribute said campaign material by United States mail to all Local 100 union members by posting it not later than Thursday, November 10, 1994.

SO ORDERED.